DAVID S. GORBATY, Judge.
Sheila[1] Cantrell appeals a judgment in a community property dissolution suit filed by her ex-husband, Michael Bordenave, arguing that the trial court erred in not allocating the ownership of the parties’ movable property, in not allocating the parties’ respective retirement benefits, and in calculating an equalizing payment to be made by her to her ex-spouse. For the following reasons, we remand.
FACTS:
Sheila Cantrell and Michael Bordenave were married in September of 1969. Sheila filed for legal separation in November of 1988, establishing the date that the community terminated. The couple was granted a divorce in November of 1989.
Both Sheila and Michael work for Bell-South. Michael began working on January 3, 1972, and Sheila on November 26, 1973. Each party has contributed to a retirement account, and, at the time of trial, each was still actively employed by BellSouth.
| ^Michael left the family domicile in November of 1988. At some point, Sheila was awarded the use and occupancy of the family home.[2] She has continued to live in the home, paying the first and second mortgage notes, and maintaining the residence. Michael testified that he paid the mortgage notes in December of 1988 and January of 1989, but offered no documentary proof. Sheila did not dispute his testimony at trial, but on appeal argues that she also paid the January notes.
At the beginning of the trial, the parties stipulated that the family home was valued at $100,000, that Sheila had possession of community movables valued at $2,450, and that Michael had possession of community movables valued at $2,860.
Michael testified that he initially filed a petition to partition the community in 1989, but for various reasons, the matter never got to trial. The trial court acknowledged that it had reviewed the entire record and agreed with Michael’s testimony, commenting that “... this is unconscionable that it has taken 13 years to get this case tried. The justice system is not supposed to work like this.”
At trial Sheila argued that she was entitled to reimbursement for the mortgage note payments, principal and interest, she had made through the date of trial. Michael argued that he should not have to reimburse Sheila for any payments because she had enjoyed exclusive use of the home since their separation, and had intentionally caused the long delay in partitioning the property. However, if the court deemed reimbursement was appropriate, he should only have to pay half of the principal payments because Sheila benefited from the tax credits.
|3The trial court rendered judgment awarding Sheila the family home, and ordering her to pay Michael an equalizing payment of $10,000. The court reasoned that accepting either party’s argument would result in a substantial injustice against the non-prevailing party. The court stated that it relied on La.Rev.Stat. 9:2801 A(4)(c) and 9:2801 A(4)(d) to reach its decision. However, neither the community’s movable assets nor the parties’ retirement accounts was allocated or even mentioned in the judgment. Notably, in its reasons for judgment, the trial court *252 stated “[t]he parties have one asset, the former matrimonial domicile.”
DISCUSSION:
In her first assignment of error, Sheila argues that the trial court erred in not rendering judgment awarding each party the movable community property they possessed. She relies on La.Rev. Stat. 9:2801 A(4)(c) which requires the trial court “to allocate or assign to the respective spouses all of the community assets and liabilities.” Michael asserts that because the community movables remaining in each party’s possession was negligible, the court did not err in neglecting to include the items in the judgment.
The record indicates that each party filed into the record a Detailed Descriptive List listing numerous items of movable property in his own and each other’s possession. The parties stipulated at trial as to the value of the movables in their possession as of the time of trial. Although the parties were not contesting what property the other had in his possession or asking the court to redistribute the property item by -item, La.Rev.Stat. 9:2801 A(4)(c) does mandate the trial court to allocate or assign all of the community assets and liabilities. Thus, it was error for 14the trial court to omit from the judgment the allocation of movables between the parties.
Similarly, Sheila argues that the trial court erred in not rendering judgment as to each party’s respective rights to the other party’s retirement benefits. She again cites the mandate that the trial court allocate all of the community assets and liabilities. La.Rev.Stat. 9:2801 A(4)(c). Her position is that the court had sufficient evidence before it to render a judgment and issue a QDRO using the fixed percentage method of calculation.
Michael argues that because the parties both worked for BellSouth for the same amount of time during the existence of the community, the trial court was free to assume that the retirement accounts were of relatively equal value, obviating the need to allocate those assets. He also argues that there was no evidence introduced at trial regarding the parties’ pension plans; therefore, this Court should not review the issue. We disagree for two reasons. First, there is testimonial evidence that Michael began working for BellSouth on January 3, 1972, and that Sheila did not begin working for BellSouth until November 28, 1973, a difference of almost 23 months. Even if the parties were being paid the same salary, this difference in length of service is substantial enough to warrant the trial court’s consideration of this asset. Second, there was evidence introduced sufficient for the court to make a fixed percentage calculation.
Both parties testified that they worked for BellSouth and contributed to a retirement account during the existence of the community. Both parties were still working for BellSouth at the time of trial. This is sufficient evidence to utilize the fixed percentage method of calculation set forth in Sims v. Sims, 358 So.2d 919 (La. 1978). The trial court erred in not calculating the fixed percentage each party | Bwas entitled to receive from the other’s retirement account, and ordering a QDRO for each. In her final assignment of error, Sheila argues that the trial court erred in not ordering Michael to reimburse her for his half of the mortgage payments made on the family home. Further, the trial court erred in ordering her to pay Michael an equalizing payment of $10,000. According to Sheila, she has paid $52,900 for notes on the first and second mortgages, $748 in property taxes, $4,377.50 in homeowners and flood insurance premiums, and *253 $100 for an appraisal on the house. She acknowledges that Michael also has a reimbursement claim, and itemizes his claim as $4,000.00 for a child support overpayment which Sheila does not dispute, $382.48 for utilities paid after leaving the family home, a $150 appraisal fee incurred in connection with the earlier filed petition to partition, and $345.79 representing half of mortgage payments made after the date the community terminated. Sheila also argues that because the movables in Michael’s possession are worth more than those in her possession, the value of those items must be equalized. Therefore her net reimbursement is $53,502.58. With credit given to Michael for his half of the equity in the house, Sheila claims to be due an equalizing payment of $21,867.07.
Michael disputes that he owes Sheila any reimbursement at all because she has had the benefit of the use of the home since approximately January of 1989, and that she has delayed the partition of the community property despite his having filed a petition to partition in 1989. If, however, this Court should determine that he does owe reimbursement, then he should only have to reimburse Sheila for half of the principal payments on the mortgages. Michael disputes that he is responsible for property taxes, insurance, or interest on the loan, particularly in light of the fact that Sheila benefited from the tax credit on her income tax.
| (¡Louisiana Civil Code art. 2365 provides as follows:
If separate property of a spouse has been used to satisfy a community obligation, that spouse, upon termination of the community property regime, is entitled to reimbursement for one-half of the amount or value that the property had at the time it was used. The liability of a spouse who owes reimbursement is limited to the value of his share in the community after deduction of all community obligations.
Nevertheless, if the community obligation was incurred for the ordinary and customary expenses of the marriage, or for the support, maintenance, and education of children of either spouse in keeping with the economic condition of the community, the spouse is entitled to reimbursement from the other spouse regardless of the value of that spouse’s share of the community.
Applying this article, it is clear that the trial court erred in not considering Sheila’s reimbursement argument.
As to Michael’s argument that he should only have to reimburse Sheila for principal payments, La. Civ.Code art. 2369.3 renders his argument meritless. Louisiana Civil Code art. 2369.1 provides that general laws of co-ownership apply after a community terminates by divorce or separation, unless otherwise provided by law. The official comments (1995) to C.C. art. 2369.1 explain that C.C. arts. 2369.2 through 2369.8 are examples of instances where the law provides otherwise when dealing with former community property. C.C. art. 2369.3 mandates that “[a] spouse has a duty to preserve and to manage prudently former community property under his control, ..., in a manner consistent with the mode of use of that property immediately prior to termination of the community property regime. He is answerable for any damage caused by his fault, default, or neglect.” Clearly, this article instructs that the ex-spouse in possession of the former family home must make all payments necessary to prevent foreclosure on the property. These 17payments necessarily include principal and interest payments on mortgages, payments of insurance premiums required by the mortgage holders, and property taxes assessed against the community asset. To *254 that end, we find that the trial court erred in not ordering Michael to reimburse Sheila for half of all mortgage payments made by her since the termination of the community property regime. Likewise, because Michael claimed that he made at least two payments subsequent .to the termination of the regime, he must receive credit upon proof that he made the payments.
Michael’s arguments that equity must prevail and that the trial court’s judgment should be upheld because it followed the mandates of La.Rev.Stat. 9:2801 lack merit. The trial court’s reliance on La.Rev. Stat. 9:2801 was not incorrect. However, that statute only provides the general principles for partitioning community property. The trial court erred in not applying the other specific provisions of law pertaining to division of community property.
This Court is empowered to render judgment without remand if there is a sufficient record upon which to do so. In this case, the record is not clear in the following instances. First, the first mortgage records supplied by Sheila appear to indicate that the first mortgage lender es-crowed certain funds from each payment. This Court cannot ascertain the purpose of the escrow account. Accordingly, we must remand this matter for the trial court to take additional evidence, specifically to determine whether Sheila made separate payments for property taxes and insurance or whether those amounts were escrowed. If monies were escrowed to cover payment of taxes and/or insurance, then Sheila is not entitled to recover separately for those amounts. If, however, taxes or insurance or neither were escrowed and Sheila can prove that she made separate payments for those debts, |sthen she is entitled to reimbursement for half of those payments. The second instance in which the record is lacking is the amount of equity in the house as of the date of trial, March 18, 2002. The documents provided by Sheila only indicate the principal balance as of January 2001. Clearly, if Sheila is to benefit from payments made through the date of trial, then Michael must also benefit from the increased equity in the home.
Accordingly, this case is remanded to allow the trial court to take additional evidence on the amount of equity in the home as of the date of trial, on the escrow issue detailed herein, and for proof of payments made by the parties for the January 1989 mortgage payments. Further, the case is remanded for the trial court to make a fixed percentage calculation on each party’s retirement account, and to order a QDRO for each. Lastly, the case is remanded for the trial court to render an amended judgment consistent with this opinion, and to include the allocation of the movables in each party’s possession on the date of trial.
REMANDED WITH INSTRUCTIONS.

. Ms. Cantrell’s first name is spelled differently throughout the record. For purposes of this opinion, we will use the name "Sheila” as it appears on the original petition.

. The trial court record prior to the filing of this petition to partition on 1/5/01 was not included in the record on appeal.