JUDGE SANDRA CABRINA JENKINS
In this community property partition suit, appellant Lisa Allen Mendoza ("Lisa") seeks reversal of the trial court's July 27, 2016 judgment denying Lisa's demand for reimbursement from her ex-husband, appellee Wayne J. Mendoza, Sr. ("Wayne"), of Road Home funds she used to rebuild their co-owned house that was destroyed by Hurricane Katrina. For the reasons that follow, we affirm.
FACTUAL AND PROCEDURAL BACKGROUND
On July 21, 1989, the Mendozas were married in St. Bernard Parish, where they established their matrimonial domicile. On August 22, 1993, during their marriage, the Mendozas purchased immovable property located at 3716 Gallo Drive in Chalmette, Louisiana (the "Property") for $73,395.00. In January 1995, the Mendozas paid off their mortgage loan on the Property using settlement funds that Wayne received from a work-related injury.
On June 24, 1999, Lisa filed a Petition for Divorce, and she was awarded the temporary exclusive use and occupancy of the Property. On January 28, 2000, the court entered a Judgment of Divorce. More than five years later, on August 29, 2005, the Property was destroyed by Hurricane Katrina. At the time, Lisa was the sole occupant of the Property; Wayne was living in Metairie, Louisiana.
After Hurricane Katrina, Lisa applied for a grant from the Road Home program to rebuild the Property.[1] The Road Home program requires applicants to provide documents verifying ownership, such as a title policy, deed, mortgage, or tax bill.[2]
*70 The record does not reflect which documents Lisa submitted to Road Home to verify ownership of the Property.
As part of the grant process, Lisa signed a series of documents: (1) a "Road Home Grant Recipient Affidavit" ("Road Home Affidavit"); (2) a "Road Home Program Grant Agreement" ("Grant Agreement"); and (3) a "Road Home Declaration of Covenants Running With the Land" ("Covenants").
In the Road Home Affidavit, Lisa attested that she was the sole "owner-occupant" of the Property on the date of Hurricane Katrina, that the Property was her primary residence, and that she was currently the owner of the Property. Although the Property was community property acquired during their marriage, Lisa did not identify Wayne as an "owner." In the Road Home Affidavit, Lisa certified that all information provided in the grant application and closing documents was true to the best of her knowledge.
At the grant closing on May 8, 2007, Lisa executed a Grant Agreement in which she is again identified as the sole "homeowner." The Grant Agreement specifies that its purpose is to "provide compensation for damages incurred by the Homeowner(s) due to Hurricane Katrina." The Grant Agreement states that "[t]he proceeds of the Grant will be disbursed in one lump sum directly to the Homeowner(s)." Although the agreement contains a space to identify any "co-homeowner," this space is left blank. Again, Lisa certified that all information that she provided to Road Home was true to the best of her knowledge.
In the Covenants, Lisa is again identified as the sole owner of the Property. The Covenants provide as follows:
NOW, THEREFORE, for and in consideration of receipt of all Grant proceeds as compensation for damages incurred by the Owner due to the Hurricanes, and in order to mitigate further future damage from hurricanes and similar natural disasters, Owner hereby makes the following Covenants and agreements with respect to the Property, which Covenants and agreements shall constitute covenants and restrictions running with and encumbering the Property . (Emphasis added.)
The Covenants include: (1) an agreement not to sell, assign, transfer or otherwise dispose of the Property for three years unless the transfer is made pursuant to the Covenants, and the transferee agrees to abide by the Covenants and assume the owner's obligations under the Covenants and the Grant Agreement; (2) an agreement not to use or occupy the Property except as a primary residence; (3) an agreement to obtain hazard insurance on the Property for three years; and (4) an agreement to obtain flood insurance if the Property is located in a Special Flood Hazard Area.
The Covenants further provide:
Covenants Running With the Property : These Covenants shall constitute covenants running with the Property and shall be binding upon the Owner, and are intended to create negative predial servitudes, predial servitudes, and restrictions on alienation . (Emphasis added.)
If the owner does not comply with the Covenants, "the entire amount of the Grant shall be immediately due and payable, without notice or demand." The Covenants further provide that any judgment obtained against a defaulting owner for breach of the Covenants "shall act as a judicial mortgage against the Property from and after the date of recordation."
*71 The Covenants are to be recorded in the parish in which the property is located.
After the closing, the Road Home program disbursed $128,180.00 in grant funds to Lisa. At trial, Lisa submitted a list of repairs she made to the Property totaling $125,136.00. Lisa testified that she did not pay any money "out of pocket" for these repairs.
On March 11, 2015, Wayne filed a "Petition to Partition Immovable Property by Licitation" ("Petition") naming Lisa as the defendant. Wayne filed a detailed descriptive list declaring the Property as the only community asset, which he valued at $200,000.00. Wayne also requested rental reimbursement from Lisa. Lisa filed a detailed descriptive list valuing the Property at $140,000.00, and requesting reimbursement of $75,000.00 in "separate funds" she used to repair the Property.
A partition trial was held on March 9, 2016. On July 27, 2016, the trial court rendered a judgment: (1) ordering a partition by licitation of the Property; (2) denying Wayne's request for rental payment; and (3) denying Lisa's request for reimbursement of one-half of the Road Home funds she used to repair the Property. In its judgment, the trial court concluded that Lisa had "failed to prove any expenditures of funds for which she is entitled to reimbursement." Lisa suspensively appealed the judgment.
DISCUSSION
Standard of Review
A trial court's rulings regarding the partitioning of community property are reviewed under the "manifest error" standard, granting great discretion to the trial court. Smith v. Smith , 15-1231, p. 2 (La. App. 4 Cir. 9/14/16), 200 So.3d 1007, 1009. "Applying this standard requires that 'we must first find from the record that there is a reasonable factual basis for the lower court's findings of fact; second, the record must establish that the lower court's findings are not manifestly erroneous or clearly wrong.' " Id. , 15-1231,p. 2, 200 So.3d at 1009-10 (quoting Mazzini v. Strathman , 13-0555, p. 3 (La. App. 4 Cir. 4/16/14), 140 So.3d 253, 256 ). We review the trial court's legal conclusions in a partition action de novo . Noel v. Noel , 04-0105, p. 7 (La. App. 4 Cir. 9/8/04), 884 So.2d 615, 619.
Ownership of Road Home Funds
Lisa contends that the trial court erred in finding that the money from the Road Home program was a "grant to both owners of the property to restore the property."[3] According to Lisa, the Road Home money was her "separate property" because she was the "only party that went through the application process, met the qualifications, received the funds, contractually obligated herself to either pay back the funds or fulfill certain conditions, and then satisfied her contractual obligations."
We must decide, therefore, whether the Road Home grant money is Lisa's "separate property" or whether Wayne has an ownership interest in these funds.
In his brief, Wayne cites information from the website of the Road Home program. We may take judicial notice of governmental websites. See Felix v. Safeway Ins. Co. , 15-0701, p. 7 (La. App. 4 Cir. 12/16/15), 183 So.3d 627, 632 & n.10. Information *72 from the website establishes that, under the Road Home program, if the co-owners of damaged property are divorced or do not live together, they are to "jointly receive" the Road Home benefits. The Q & A section of the website states as follows:
What if the owners of a home at the time of the storm are divorced, separated or otherwise no longer live together? Can both apply for the same property?
The Road Home can accept only one application for each property, and this applies to owners that are divorced or separated or may no longer be living together. Both owners must sign The Road Home Covenants and will jointly receive the benefits unless legal documents direct The Road Home to do something else. (Emphasis added.)
https://web.archive.org/web/20130328001400/http://road2la.org/Docs/HAP/faq/HAP% 20FAQs% 202012.04.11.pdf#expand (last visited May 17, 2018.)
The Road Home website further states:
If one of the spouses cannot be located, the person filing The Road Home application may initiate a lawsuit that requests the court to authorize who receives The Road Home benefits. If spouses or other owner-applicants are in dispute over the benefits and disposition of the property, the owners will need to legally settle the community property. A lawyer can assist with these options.
Id.
Here, even though Lisa and Wayne were divorced and no longer living together, because they both owned the Property, Road Home required that both sign the Road Home Covenants, and stipulated that they were to jointly receive the proceeds. We reject Lisa's argument that Wayne could not qualify for Road Home funds because he did not "occupy" the house when Hurricane Katrina struck. The Road Home website clearly contemplates that co-owners are to "jointly" receive the proceeds even though they "are divorced or separated or may no longer live together" "at the time of the storm."
Accordingly, there is a reasonable factual basis for the lower court's finding that the Road Home money was a grant to both Lisa and Wayne to rebuild their house. The trial court's decision was not manifestly erroneous or clearly wrong.
Lisa's Claim for Reimbursement
Lisa also contends that the trial court erred in denying her request for reimbursement from Wayne for the "substantial improvements" she made to the community home after it was destroyed by Hurricane Katrina. Lisa relies on La. C.C. arts. 2369.1, 804, and 496.
The Mendozas do not dispute that the Property, which was acquired during their marriage, is community property. See La. C.C. art. 2338. The Mendozas' community property regime, however, terminated on June 24, 1999, when Lisa filed the Petition for Divorce. See La. C.C. art. 2356 (the legal regime of community property is terminated by, inter alia , a judgment of divorce); La. C.C. art. 159 ("[a] judgment of divorce terminates a community property regime retroactively to the date of filing of the petition in the action in which the judgment of divorce is rendered").
La. C.C. art. 2369.1 provides that "[a]fter termination of the community property regime, the provisions governing co-ownership apply to former community property, unless otherwise provided by law or by juridical act." The Civil Code provisions setting forth the general principles of co-ownership are found in La. C.C. arts. 797 - 818.
La. C.C. art. 804 provides, in pertinent part:
*73 Substantial alterations or substantial improvements to the thing held in indivision may be undertaken only with the consent of all the co-owners.
When a co-owner makes substantial alterations or substantial improvements consistent with the use of the property , though without the express or implied consent of his co-owners, the rights of the parties shall be determined by Article 496 .... (Emphasis added.)
Lisa contends that because she made "substantial improvements" to the Property, albeit without the express or implied consent of Wayne, she has a right to reimbursement under La. C.C. art. 496, which provides:
When constructions, plantings, or works are made by a possessor in good faith, the owner of the immovable may not demand their demolition and removal. He is bound to keep them and at his option to pay to the possessor either the cost of the materials and of the workmanship, or their current value, or the enhanced value of the immovable . (Emphasis added.)
Thus, Lisa demands that Wayne reimburse her for one-half of either: (1) the enhanced value of the Property attributable to the improvements that she made; or (2) the costs of the materials and workmanship; or (3) the current value of the costs of the materials and workmanship.
In this case, however, we do not have a co-owner who simply made "substantial improvements" to co-owned property solely with her own funds, without the other co-owner's consent, and then asked to be reimbursed. Here, Lisa, without Wayne's consent, rebuilt the Property using Road Home funds jointly owned by the parties. Lisa did not pay any money "out of pocket," and apparently kept the excess Road Home money.[4] In order to obtain the grant, Lisa alienated and encumbered the Property without Wayne's consent. Thus, for three years, Wayne could not sell, assign, or transfer the Property (even with Lisa's consent) unless the transferee agreed to abide by the Covenants and assume Lisa's obligations. The Grant Agreement also created a predial servitude, which is an alienation of a part of Wayne's co-owned Property. See La. C.C. art. 708. Finally, if Lisa failed to comply with the Covenants, and a judgment was rendered against her, that recorded judgment would become a judicial mortgage against the Property, by which the Property could be seized and sold. See La. C.C. art. 3741.
Lisa's management of the Road Home funds and the Property plainly contravened the Civil Code articles governing co-ownership. Under Louisiana principles of co-ownership, a co-owner may not dispose of the entire thing held in indivision without the consent of all the co-owners. La. C.C. art. 805. Under La. C.C. art. 2369.4, "[a] spouse many not alienate, encumber, or lease former community property ... without the concurrence of the other spouse...." "In the absence of such concurrence, the alienation, encumbrance, or lease is a relative nullity."Id. Likewise, under La. C.C. art. 714, "[a] predial servitude *74 on an estate owned in indivision may be established only with the consent of all the co-owners." Thus, "[w]hen a co-owner purports to establish a servitude on the entire estate, the contract is not null; but its execution is suspended until the consent of all co-owners is obtained." Id.
Under the particular circumstances presented here, we agree with the trial court that Lisa is not entitled to reimbursement under La. C.C. arts. 804 and 496.[5]
Unjust Enrichment
Lisa also contends that it would be inequitable to give Wayne an ownership interest in the Road Home funds, when Lisa alone applied for the grant and Wayne did "absolutely nothing to contribute to rebuild the home."
La. C.C. art. 2298 codifies the equitable doctrine of unjust enrichment as follows:
A person who has been enriched without cause at the expense of another person is bound to compensate that person. The term "without cause" is used in this context to exclude cases in which the enrichment results from a valid juridical act or the law. The remedy declared here is subsidiary and shall not be available if the law provides another remedy for the impoverishment or declares a contrary rule.
The amount of compensation due is measured to the extent to which one has been enriched or the other has been impoverished, whichever is less.
There are five elements required for a showing of unjust enrichment:
(1) there must be an enrichment;
(2) there must be an impoverishment;
(3) there must be a connection between the enrichment and resulting impoverishment;
(4) there must be an absence of "justification" or "cause" for the enrichment and the impoverishment; and
(5) there must be no other remedy at law available to the plaintiff.
Baker v. Maclay Prop. Co. , 94-1529, pp. 18-19 (La. 1/17/95), 648 So.2d 888, 897.
As discussed above, Road Home grants are intended to compensate all owners of property severely damaged or destroyed by Hurricanes Katrina and Rita, and are to be paid jointly to the co-owners in exchange for compliance with the Covenants. Here, Lisa excluded Wayne from the Road Home process altogether.[6] In so doing, Lisa allowed the co-owned Property to be encumbered and alienated without Wayne's consent. Even though Lisa was required to insure the Property, she also had the sole and exclusive use of the Property without mortgage payments.[7] Lisa had no "out of pocket" expense in restoring the home. In the end, there was no impoverishment or enrichment, but rather a mutual economic benefit for both Lisa and Wayne. Lisa's resort to "equity" is without merit.
CONCLUSION
For the foregoing reasons, we affirm the trial court's July 27, 2016 judgment denying Lisa's claim for reimbursement.
AFFIRMED
LOVE, J., CONCURS IN PART AND DISSENTS IN PART FOR THE REASONS ASSIGNED BY JUDGE LOBRANO
LOBRANO, J., CONCURS IN PART; DISSENTS IN PART; AND ASSIGNS REASONS
LOVE, J., CONCURS IN PART AND DISSENTS IN PART FOR THE REASONS ASSIGNED BY JUDGE LOBRANO
LOBRANO, J., CONCURS IN PART; DISSENTS IN PART; AND ASSIGNS REASONS
*75 I respectfully dissent. In this community property partition case, appellant Lisa Mendoza ("Lisa") seeks reversal of the district court's July 27, 2016 judgment classifying the Road Home funds as a grant to both Lisa and the appellee, Wayne Mendoza ("Wayne"), and denying Lisa's claim for reimbursement. I find that the district court erred by classifying the Road Home funds as co-owned and by denying Lisa's claim for reimbursement. I would affirm the portion of the judgment granting the partition itself, reverse the portion of the judgment classifying the Road Home funds as a grant to both Lisa and Wayne, reverse the portion of the judgment denying Lisa's reimbursement claim, and remand the case for a determination of the value of the property and the amount of reimbursement owed to Lisa under La. C.C. art. 496.
Because I find that the district court improperly classified the Road Home funds as a co-owned grant, the proper standard of review in this case is de novo . Plaquemines Par. Gov't v. Schenck , 2015-0127, p.4 (La.App. 4 Cir. 12/9/15), 182 So.3d 1122, 1124, writ denied , 2016-0046 (La. 2/26/16), 187 So.3d 1003, and writ denied , 2016-0045 (La. 2/26/16), 187 So.3d 1004 ; Kevin Associates, L.L.C. v. Crawford, 2003-0211, p. 15 (La. 1/30/04), 865 So.2d 34, 43. "In a case involving no dispute regarding material facts, but only the determination of a legal issue, a reviewing court must apply the de novo standard of review, under which the [district] court's legal conclusions are not entitled to deference." Felix v. Safeway Ins. Co. , 2015-0701, p. 6 (La.App. 4 Cir. 12/16/15), 183 So.3d 627, 631 (citing TCC Contractors, Inc. v. Hosp. Serv. Dist. No. 3 of Parish of Lafourche, 2010-0685, p. 8 (La.App. 1 Cir. 12/8/10), 52 So.3d 1103, 1108, citing Kevin Associates, L.L.C. v. Crawford, 2003-0211, p. 15 (La. 1/30/04), 865 So.2d 34, 43 ); see also Benson v. ABC Ins. Co., 2012-517, p. 2 (La.App. 3 Cir. 11/7/12), 106 So.3d 143, 145, writ denied, 2012-2650 (La. 2/8/13), 108 So.3d 86.
Lisa assigns two related errors. First, she argues that the district court erred in adjudging the Road Home funds a "grant" to both Wayne and herself, apparently classifying the funds as a co-owned thing. Next, she argues that the district court wrongfully denied her reimbursement claim for the expenditure of those Road Home funds. Both assignments of error hinge on the district court's classification of the funds as something co-owned by Lisa and Wayne. The district court provided no reasons for its classification of the Road Home funds as a "grant" to both Lisa and Wayne.
Under Louisiana law, property is characterized as either community or separate. La. C.C. art. 2335. Things possessed by either spouse during a community regime are presumed to be community things. La. C.C. art. 2340. The classification of property as separate or community is fixed at the time the thing is acquired. In re Succession of Allen, 2005-0745, p. 3 (La.App. 4 Cir. 1/4/06), 921 So.2d 1030, 1032. Louisiana Civil Code art. 2369.3 provides that *76 the general laws of co-ownership apply to what was formerly community property after a judgment of divorce and prior to partition, unless otherwise provided by law. See also Bordenave v. Bordenave, 2003-1534, p. 6 (La. App. 4 Cir. 2/25/04), 869 So.2d 249, 253. Although, during their marriage, Lisa and Wayne had a community property regime,[1] Lisa acquired the Road Home funds after the community property regime terminated. Because the Road Home funds were not acquired by either spouse during marriage, they were not a community thing. Louisiana Civil Code art. 2369.3, therefore, cannot be the basis for treating the funds as co-owned. Furthermore, due to the fact that the contract was entered into after marriage, the Road Home contract cannot be said to have created a community obligation. See La. C.C. art. 2359 (stating that an obligation incurred by a spouse may be either community or separate).[2]
It is undisputed that the Property was co-owned by Lisa and Wayne at the time that Lisa applied for the Road Home funds. Therefore, Wayne was entitled to move for the property to be partitioned. See La. C.C. art. 2369.8 (providing that a former spouse has the right to demand partition of former community property at any time). Wayne argues that, due to his ownership interest in the Property, the Road Home funds would have been co-owned by Lisa and Wayne but for Lisa's omission of Wayne's name from the Road Home application. Conversely, the record indicates that Wayne did not occupy the Property at the time of Hurricane Katrina and, due to the divorce and his intermittent incarceration, could not commit to living in the Property during the three year period beginning on the date of the grant agreement with Road Home. See, e.g., Goutierrez v. Goutierrez, 2012-428, p. 7 (La.App. 3 Cir. 11/7/12), 102 So.3d 1047, 1053 (wherein an owner of residential property failed to qualify for Road Home funds when he did not reside at the home on the date of the hurricane that damaged it).[3] Regardless of Lisa's omission from the application, Wayne failed to prove that the funds could have ever been a co-owned thing. Louisiana law does not permit a district court to reclassify what is obviously separate property acquired by a former spouse after a judgment of divorce on the basis of a hypothetical. Although the result may have been different had Wayne proven that the funds could have ever been able to be co-owned, that is not the case before this Court.
Wayne further argues that Lisa obligated him when she entered into the contract, and, thus, the funds should partially belong to him. He bases this argument on the fact that the Road Home grant created *77 covenants to run with the Property. He argues that had Lisa not complied with the requirements set forth by Road Home, it could have sought return of the funds from him because he has an interest in the property.
This argument lacks merit. Wayne cites no authority for the proposition that Road Home could ever recover funds from him under this particular contract. See La. R.S. 9:2801(4)(c) (stating that the allocation of assets and liabilities in a community property partition in no way affects the rights of creditors).[4] He fails to explain how Lisa could have encumbered something, namely, his interest in the Property, which she does not own. See La. C.C. art. 1977 (stating, "[t]he party who promised that obligation or performance is liable for damages if the third person does not bind himself or does not perform"); see also La. C.C. art. 1977 cmt. (b) (stating, "[f]or as long as the third person does not bind himself, the promisor remains the sole obligor..."). Moreover, the Road Home contract itself provides that "[t]hese Covenants are not intended to create, nor shall be interpreted or construed to create, any third-party beneficiary rights in any party not a party hereto except for the United States of America...." Additionally, Wayne has not alleged that Lisa has failed comply with the requirements set forth by Road Home or that Road Home has attempted to recover any funds from him.
Because the Road Home funds were a separate thing owned by Lisa alone, which she invested into a co-owned thing, she is entitled to reimbursement under La. C.C. art. 496.[5] Accordingly, I would affirm the portion of the judgment of the district court granting the partition itself, and reverse the portion classifying the Road Home funds as a grant to Lisa and Wayne and denying Lisa's reimbursement claim, and remand for further proceedings to determine the value of the Property and the amount of reimbursement due to Lisa.

Following Hurricanes Katrina and Rita, federal funds were appropriated to the State of Louisiana by the federal government for the purpose of disaster recovery and compensation for those property owners affected by the storms. The Road Home Program was developed by the State of Louisiana and approved by the United States Department of Housing and Urban Development as a plan for disbursement of Community Development Block Grant funds to property owners. Blanchard v. Newton , 865 F.Supp.2d 709, 712 (M.D. La. 2012).

See Malcolm A. Meyer, Louisiana Heirship Property: Solutions for Establishing Record Title , 55 LA. B.J. 328 (February/March 2008).

We find no merit in Lisa's argument that the Road Home grant was a loan made solely to her. "A federal grant is an award of financial assistance from a federal agency to a recipient to carry out a public purpose of support or stimulation authorized by a law of the United States. Federal grants are not ... loans to individuals." Fed. Trade Comm'n v. Johnson , No. 2:10-cv-02203, 2017 WL 3503720, *14 (D. Nev. Aug. 16, 2017).

Although the Road Home grant was $128,180.00, Lisa spent $125,136.00 to rebuild the house. In Robeaux v. Robeaux , 13-0404 (La. App. 4 Cir. 11/6/13), 129 So.3d 659, an ex-wife received $42,367.58 in insurance proceeds to repair a Katrina-damaged house that she owned in community with her ex-husband. She admitted that she used $24,000.00 of the proceeds to supplement her living expenses. This Court found that the ex-husband was entitled to a reimbursement offset of $12,167.21 for half of the remainder of the insurance proceeds expended by his ex-wife. Id. , 13-0404, p. 6, 129 So.3d at 664-65.

Scholars have acknowledged that "the actual application of [La. C.C. art. 496 ] to the special situation of co-owners is extremely problematic." Symeonides & Martin, The New Law of Co-Ownership: A Kommentar , 68 Tul. L. Rev. 69, 137 (1993).

At the partition trial, Lisa testified that she didn't tell Road Home that Wayne as a co-owner of the Property because "he didn't live there."

Absent an agreement, a co-owner does not have the exclusive use of a thing held in indivision . La. C.C. art. 802, Rev. Cmt. (c).

See La. C.C. art. 2334.

Both parties spend much of their briefs arguing about whether Lisa's obligation to Road Home is onerous or gratuitous in nature. Because I find that the pertinent issues are whether the obligation itself was Lisa's separate obligation and the funds her separate property, I pretermit a discussion of the onerous nature of the Road Home obligation.

The Road Home recipient affidavit states in pertinent part:
1. (a) At the date of Hurricane Katrina or Hurricane Rita, I/we was/were the owner-occupant(s) of the property located at [address of the Property], and it was my/our primary residence...
* * *
3. ...The Grant Agreement imposes an obligation on me/us to occupy the Property as our primary residence at some point during the 3-year period beginning on the date of the Grant Agreement. The Covenants restrict me/us from using and occupying the Property for any purpose other than as my/our primary residence for the 3-year period beginning on the date of the Covenants.

See supra fn. 3 ("At the date of Hurricane Katrina or Hurricane Rita, I/we was/were the owner-occupant(s) of the property located at [address of the Property], and it was my/our primary residence."). It is clear from the plain language of the affidavit that the contract with Road Home binds the occupant of the Property, Lisa, alone.

As former community property, the Property was co-owned by Lisa and Wayne. See La. C.C. art. 2369.3 (providing that former community property is co-owned in indivision). La. C.C. art. 804 provides that substantial improvements generally may be undertaken only with the consent of all co-owners; but that when a co-owner makes substantial improvements consistent with the use of the property, La. C.C. art. 496 governs. La. C.C. art. 496 provides:
When constructions, plantings, or works are made by a possessor in good faith, the owner of the immovable may not demand their demolition and removal. He is bound to keep them and at his option to pay to the possessor either the cost of the materials and of the workmanship, or their current value, or the enhanced value of the immovable.
Accordingly, Wayne is bound to reimburse Lisa one-half of either the cost of the materials and of the workmanship, or one-half of their current value, or one-half of the enhanced value of the immovable.