STATE OF LOUISIANA     *     NO. 2020-KA-0386

VERSUS     *

    **COURT OF APPEAL**

PERCY PLATT     *

    **FOURTH CIRCUIT**

    *

    **STATE OF LOUISIANA**

* * * * * * *

APPEAL FROM
CRIMINAL DISTRICT COURT ORLEANS PARISH
NO. 409-197, SECTION "I"
Honorable Karen K. Herman, Judge
* * * * * *
**Judge Regina Bartholomew-Woods**
* * * * * *
(Court composed of Judge Rosemary Ledet, Judge Sandra Cabrina Jenkins, Judge
Regina Bartholomew-Woods)

**LEDET, J., DISSENTS WITH REASONS**

Holli Herrle-Castillo
LOUISIANA APPELLATE PROJECT
P. O. Box 2333
Marrero, LA 70073-2333

    COUNSEL FOR APPELLANT/DEFENDANT

Jason Rogers Williams
District Attorney
David B. LeBlanc
Assistant District Attorney
G. Benjamin Cohen
Chief of Appeals
ORLEANS PARISH DISTRICT ATTORNEY'S OFFICE
619 S. White Street
New Orleans, LA 70119

    COUNSEL FOR APPELLEE/STATE OF LOUISIANA

    **SENTENCE AMENDED; AFFIRMED AS AMENDED**
    **March 10, 2021**

*RBW*

*SCJ*

In this criminal appeal, Defendant is seeking reversal of his convictions and sentences because, while he was a fugitive from Louisiana jurisdiction and later serving a sentence for other crimes in another state, his trial transcripts were lost when the criminal courthouse flooded during Hurricane Katrina.

For the reasons that follow, we amend the sentence to reflect that it is to be served without benefit of probation, parole, or suspension of sentence, and in all other ways affirm the convictions and sentences imposed by the trial court

## Factual & Procedural Background

On June 5, 1999, Appellant-Defendant, Mr. Bercy Platt, aka "Bracy Platt" ("Defendant"), was in a van with the victim W.G.[1] The two got into an argument and Defendant insisted that he be driven to his sister's residence. Upon arriving at the residence, Defendant did not exit the vehicle, but instead overpowered W.G.

---

[1] Throughout this opinion we will utilize the initials of the victim, as opposed to the victim's name. *See* La. R.S. 46:1844(W) (barring public disclosure of the names, addresses, or identities of crime victims under the age of eighteen years and of all victims of sex offenses, and authorizing use of initials, abbreviations, etc.).

1

and proceeded to sexually assault her until she managed to fight him off. Several days later, after the assault, on June 7, 1999, New Orleans Police Department Officers encountered Defendant at his sister's residence while they were investigating W.G.'s allegations. Defendant agreed to provide a statement and accompanied the officers to the Sex Crimes Office where he gave a video statement implicating himself in the assault. Subsequently, Defendant was placed under arrest.

On August 19, 1999, Defendant was charged, *via* bill of information with one count of sexual battery in violation of La. R.S. 14:43.1, and one count of oral sexual battery in violation of La. R.S. 14:43.3. On August 31, 1999, Defendant pled not guilty to both charges and was ordered to "stay away" from W.G., as well as her family.

On September 23, 1999, following a jury trial, Defendant was found guilty as charged of oral sexual battery and, as to the charge of sexual battery, guilty of the lesser included offense of simple battery in violation of La. R.S. 14:35.

The district court scheduled Defendant's sentencing for December 15, 1999. While waiting to be sentenced, Defendant was allowed to remain "on bond" and was ordered to comply with all previously stated conditions of the bond.[2] However, Defendant failed to appear for the December 15, 1999 court date, which resulted in the district court issuing an *alias capias* for his arrest.

After absconding from the jurisdiction of the district court to avoid sentencing and imprisonment, Defendant, per the Fourteenth Judicial Circuit Court

---

[2] "After conviction and before sentencing … the judge may grant bail if the maximum sentence which may be imposed is imprisonment exceeding five years." La. Const. Ann. art. I, § 18.

Beaufort County webpage,[3] committed additional sexual criminal acts in South Carolina for which he was arrested on May 4, 2002.[4] Subsequently, Defendant was charged with criminal sexual conduct with a minor aged eleven to fourteen (11- 14) years in the second degree.[5]

Prior to his trial, the State of Louisiana ("the State") learned that Defendant was in custody in South Carolina. The State, however, declined to extradite Defendant on the previously issued *alias capias*, due to the cost of transport; instead, it allowed South Carolina to proceed with its trial against Defendant and decided that once he was complete with his sentence there, it would then extradite him back to Louisiana to face sentencing for his prior convictions. Thus, the State never recalled its *alias capias*.

On September 16, 2002, Defendant was convicted and sentenced to serve twenty (20) years in the South Carolina prison system.[6] Defendant was aware of the warrant for his arrest in Louisiana that had been in place since 2002, but made no effort to request that his case and the evidence be preserved for appeal.[7]

On August 29, 2005, Hurricane Katrina struck New Orleans and the city experienced unprecedented flooding. The Orleans Parish Criminal Courthouse's basement flooded destroying the notes, transcripts, and recordings relating to

---

[3] "We may take judicial notice of governmental websites." *Mendoza v. Mendoza*, 2017-0070, p. 6 (La. App. 4 Cir. 6/6/18), 249 So. 3d 67, 71 (citing *Felix v. Safeway Ins. Co.*, 15-0701 (La. App. 4 Cir. 12/16/15), 183 So.3d 627, 632 & n.10).

[4] Beaufort County Fourteenth Judicial Circuit Public Index https://publicindex.sccourts.org/Beaufort/PublicIndex/CaseDetails.aspx?County=07&CourtAgen cy=07001&Casenum=H161416&CaseType=C&HKey=107861166677795780857210684978910 866826985531057885107878011683477310183757243981201029755510610156 (last visited Feb. 18, 2021).

[5] *Id.*

[6] *Id.*

[7] In a letter to the district court, Defendant acknowledged that in 2002 his caseworker informed him of the warrant. In the letter, Defendant reported he wrote six (6) to eight (8) letters from 2002 to 2004 to the Clerk of Orleans Criminal District Court to inform of his South Carolina sentence.

Defendant's 1999 trial. When the record was lodged in this Court, the court reporter filed a certificate stating that she could not produce the trial transcript because the materials necessary to do so were destroyed by Hurricane Katrina.[8]

On April 1, 2019, Defendant was released from prison in connection with the South Carolina sentence. However, he was detained on the *alias capias* previously issued by the district court in Orleans Parish. On April 23, 2019, Defendant was taken into custody in Louisiana pursuant to the December 15, 1999 *alias capias*. On October 24, 2019, he appeared before the district court for sentencing. After performing an extensive review of Defendant's case history, including letters submitted on Defendant's behalf, the district court sentenced Defendant as follows: as to the charge of oral sexual battery, rather than sentence Defendant to the maximum ten (10) year sentence, the district court sentenced him to eight (8) years at hard labor; and as to the charge of simple battery, the district court sentenced Defendant to three (3) months in parish prison; both of these sentences were to run concurrently. Additionally, the sentences were ordered to be served consecutively with Defendant's South Carolina sentence, with no credit for the time he served in South Carolina.

---

[8] The certificate states, in relevant part, as follows:

> Pursuant to a request for production of the transcripts of BERCY PLATT, Case No. 409-197, heard in Section I of the Criminal District Court on SEPTEMBER 10, 1999 and SEPTEMBER 23, 1999, before the Honorable Karen K. Herman; notes, transcripts, audio recordings of all procedures heard in Section I in 1999 were stored in the garage/basement of the Orleans Parish Criminal District Court.
>
> The storage areas allotted to Section I were completely inundated with flood water during Hurricane Katrina.
>
> I further certify that I am unable to produce a transcript of the above-requested documents.

On October 30, 2019, Defendant filed a motion to reconsider his sentence, which the district court denied. Subsequently, Defendant filed the instant appeal and designation of the record, without the lost transcripts.

**Assignments of Error**

Defendant asserts the following assignments of error:

1. The convictions and sentences should be reversed because the transcripts cannot be provided, denying the appellant's right to appellate review, and
2. The sentencing delay was unreasonable and prejudiced the appellant, mandating reversal.

**Analysis**

<u>*Errors Patent Review*</u>

Prior to analyzing Defendant's assignments of error, we are obligated to conduct a review of the record for errors patent.[9] Our review hereby reveals one error.

In 1999, when Defendant was convicted of the crime of oral sexual battery, La. R.S. 14:43.3(C) provided: "Whoever commits the crime of oral sexual battery shall be punished by imprisonment, with or without hard labor, without the benefit of parole, probation, or suspension of sentence, for not more than fifteen years." In this case, the district court failed to specify that Defendant's eight-year sentence was without the benefit of parole, probation, or suspension of sentence and actually implied Defendant could potentially be paroled stating, "I also take into account based on your age that I'm sure the Department of Corrections is going to be

---

[9] La.C.Cr.P. art. 920 (2) provides: "The following matters and no others shall be considered on appeal: (2) An error that is discoverable by a mere inspection of the pleadings and proceedings without inspection of the evidence." "Pursuant to this article, this Court routinely reviews all appeals for errors patent on the face of the record." *State v. Fields*, 2012-0674, p. 4 (La. App. 4 Cir. 6/19/13), 120 So. 3d 309, 314 n. 3; *State in Interest of H.L.F.*, 97-2651, p. 5 (La. App. 4 Cir. 5/20/98), 713 So. 2d 810, 813.

making their own calculations as to when you can get **paroled** out." (emphasis added).

When a district court inadvertently fails to specify that the imposed sentence is to be served without the benefit of parole, probation, or suspension of sentence, or any one of them, any combination thereof, La. R.S. 15:301.1 self-activates the correction and eliminates the need to remand for a ministerial correction. La. R.S. 15:301.1(A), (C); *State v. Williams,* 2000-1725, pp. 11-12, 14 (La. 11/28/01), 800 So.2d 790, 798-799, 801. When the district court erroneously used the term "parole," this error inferred that Defendant was eligible for parole. In such a situation, courts have determined that the self-correcting mechanism of La. R.S. 15:301.1 is inapplicable and the appellate court is obligated to correct the sentence. *State v. Thibodeaux*, 2005-680, p. 3 (La. App. 3 Cir. 12/30/05), 918 So. 2d 1093, 1094. "[I]n this case, the trial court was not silent and advised the Defendant incorrectly. In such cases, an appellate court is bound to correct the sentence rather than rely on La. R.S. 15:301.1(A)." *Id.* (citations omitted).

Accordingly, we hereby correct Defendant's sentences to reflect that his imprisonment shall be served *without* benefit of probation, parole, or suspension of sentence in accordance with La. R.S. 14:43.3(C).

*Lost Transcripts*[10]

Defendant asserts that his sentences should be reversed because the transcripts from his trial were lost. He argues the transcripts are necessary for a

---

[10] This case presents a *res nova* issue for the courts in Louisiana. While, as stated by the dissent - and we agree - that the Louisiana Supreme Court in *State v. Stewart*, 2015-1845 (La. 5/12/17), 219 So. 3d 306 has previously addressed the tolling of prescription when a defendant absconds and the State is aware of where the defendant is being held; the Louisiana Supreme Court has never addressed nor been faced with the situation presently before us, i.e., consequences of a lost transcript that occurred when a defendant absconds after a trial on the merits, but before sentencing.

6

judicial review prior to imprisonment pursuant to La. Const. Ann. art. I, §19.[11] Additionally, Defendant references the requirement that all trial proceedings shall be recorded. La. C.Cr.P. art. 843. In support of this assignment of error, Defendant references multiple jurisprudential authorities from both this Court, as well as the Louisiana Supreme Court, wherein reversal of a sentence and/or the ordering of a new trial was ordered when the trial transcript was lost. *See e.g., State v. Ford*, 338 So. 2d 107, 110 (La. 1976). *State v. Sublet*, 2005-0123 (La. App. 4 Cir. 5/18/05), 904 So. 2d 778; *State v. Harris*, 2001-1910 (La. App. 4 Cir. 4/24/02), 817 So. 2d 1164. *State v. Buckley*, 2006-0606 (La. App. 4 Cir. 08/02/06); 937 So.2d 881, 882-83; *State v. Milanez*, 2009-1396 (La. App. 4 Cir. 12/16/09); 28 So. 3d 523; *State v. Johnson*, 2007-0851 (La. App. 4 Cir. 09/12/07); 967 So.2d 538.

Notwithstanding the aforementioned jurisprudence, we note that the loss of a transcript is not always consequential to having the reversal of a defendant's criminal conviction/sentence. In fact, Louisiana courts, including this Court, have repeatedly upheld convictions and sentences when the defendant's own actions, or lack of action, caused the transcript to be lost due to the passage of time. *State v. Bernard,* 583 So.2d 111, 112 (La. App. 5 Cir.1991) ("We hold that if a convicted felon waits more than six years before seeking post-conviction relief, he cannot complain if a trial transcript is not obtainable."); *State v. Gonzales,* 95-0860, p. 7 (La. App. 4 Cir. 9/18/06), 680 So.2d 1253, 1256 ("Defendant's absence for a prolonged [period] and consequent acquiescence in the trial court's failure to lodge her appeal resulted in the loss of records essential to her appeal. As this absence

---

[11] No person shall be subjected to imprisonment or forfeiture of rights or property without the right of judicial review based upon a complete record of all evidence upon which the judgment is based.

was attributable to defendant's escape the consequences of that absence … must fall on her shoulders."); *State v. Clark,* 93-0321, (La. App. 4 Cir. 10/27/94), 644 So.2d 1130 (affirming defendant's conviction and sentence where defendant withdrew his motion for appeal filed soon after his conviction and waited nine years to seek and out of time appeal and the transcript was lost); and *State v. Ford,* 92-2029 (La. App. 4 Cir. 1/31/95), 650 So.2d 808 (affirming conviction where the defendant waited seven years to seek an out-of-time appeal and the transcript was lost).

In the instant case, Defendant absconded from this jurisdiction, prior to sentencing. From the end of December 1999 until approximately May 2002 – (2.5 years), the State was unaware of Defendant's location. Upon learning where Defendant was located, the State exercised its reasonable discretion to wait to extradite Defendant and Defendant can point to no statute or jurisprudential authority requiring the State to extradite him. Moreover, in the same year the State learned of Defendant's location, he was informed of the *alias capias* issued for him. Defendant, upon learning this information, took no action to preserve his records, he did not request his records, nor did he petition for *habeas corpus*. Three years later, Hurricane Katrina caused the courthouse basement to flood, which contained Defendant's trial transcripts and evidence. Mr. Platt asserts that the flooding caused by Hurricane Katrina caused the loss of the transcripts and not his fleeing Louisiana to avoid sentencing.

We recognize that this Court has previously held that the destruction of records due to Hurricane Katrina entitles a defendant to a new trial. *State v. Milanez*, 2009-1396 (La. App. 4 Cir. 12/16/09), 28 So. 3d 523. In *Milanez*, the defendant was convicted six (6) weeks before Hurricane Katrina, and sentencing

was postponed by the court twice.  28 So. 3d at 524.  The first time due to other matters before the court and the second time due to the hurricane when the transcript was destroyed.  *Id*.  This Court remanded the case for a new trial because the destruction of the transcript was through no fault of the defendant.  *Id*. at 524.

Notwithstanding our holding in *Milanez,* we find it distinguishable from the instant case in many ways.  First, Defendant was convicted nearly six (6) years before Hurricane Katrina, not a mere six (6) weeks.  Second, the district court did not continue or delay Defendant's sentencing.  Defendant chose to become a fugitive from the law and evade sentencing.  Third, Defendant's flight is the primary reason for the lost transcript.  Had he appeared for his sentencing in 1999, he would have received his sentences and been offered a chance for a timely appeal and the record would have been available.  While on the run, Defendant - of his own volition - chose to commit another crime, similar in nature to the crime he was convicted of in Louisiana causing a further delay as he went through the South Carolina justice and penal systems.  Neither the State nor the district court forced Defendant to flee or commit further crimes.  Furthermore, three (3) years before Hurricane Katrina, Defendant did not act to preserve the record, knowing that he faced sentencing in the future.  "Despite [a] constitutional right to complete review of record, defendant is not entitled to relief where his right of review is prejudiced by his own act or omission."  *Ford*, 650 So. 2d 809 (citations omitted). Defendant's own acts and omissions caused the delay in his sentencing which ultimately led to the transcript being destroyed by Hurricane Katrina.  An act of nature does not automatically grant Defendant a second chance to try and prove his innocence when his actions created the circumstances allowing for the destruction of the transcripts.

The facts of the *Gonzales* case best illustrates how Defendant is at fault in the current case. In *Gonzales*, the defendant fled after she was sentenced, but before her appeal commenced, and remained at large for eight (8) years. 690 So. 2d at 1254. The State eventually located her serving probation in Georgia and had her transferred back to Louisiana. *Id.* Two (2) years after returning to Louisiana custody, the defendant motioned to launch her appeal record and sought a new trial. *Id.* During her time in flight, the defendant's transcripts were lost for unknown reasons. *Id.* at 1255. The defendant argued that her flight should not have stopped her appeal proceedings and therefore the loss of her records was not her fault. *Id.* This Court noted, "We do not believe appellant should benefit from [] inaction from 1983 to 1990, particularly in the absence of any statutory violation regarding the keeping of records and in the total absence of any showing (or even suggestion) of bad faith by either court reporter or the prosecution." *Id.*

Similarly, Defendant in the instant matter, like the defendant in *Gonzales*, fled Louisiana's jurisdiction and committed additional sexual criminal activities in another state. Just as the defendant in *Gonzales* failed to act on her case, even while in flight and later in custody, Defendant here failed to act on his case while he was in custody. Finally, like in *Gonzales,* Defendant has made no showing of bad faith or statutory violation regarding the keeping of the records. Of particular note in *Gonzales*, the manner in which the records were lost was not the issue for this Court, but rather, *who* was ultimately at fault for the delay that caused the loss of the records was more pertinent to this Court's holding. In this case, just as in *Gonzales*, this Court is concerned with fault, not the method. Neither the State, the district court, nor the court reporter was shown to act illegally or irresponsibly regarding Defendant's transcript; nor did any of them perform any action that

delayed Defendant's sentencing. Defendant, solely, actively caused his sentencing delay by fleeing and committing further crimes in another jurisdiction and should not be rewarded with a new trial more than a decade after the convictions of his prior crimes.

Thus, we find Defendant's first assignment of error to be without merit.

*Sentencing Delay*

Defendant's second assignment of error is that there has been an unreasonable delay in sentencing in violation of La. C.Cr.P. art 874.[12] Specifically, Defendant asserts that the delay should result in the district court being stripped of its sentencing jurisdiction.[13]

Procedurally, a defendant should seek a supervisory writ to address claims of unreasonable delay in sentencing. La. C.Cr.P. art 874. Defendant objected to his sentence at the district court, but did not state an unreasonable sentencing delay as the reason for his objection. The delay in sentencing was raised for the first time in this appeal. While, in the past, this Court has considered sentencing delays that were initially raised on appeal,[14] we decline to do so now. The delay in sentencing was caused by Defendant's absconding, not by any act of the State or district court, and Defendant cannot now benefit from his own bad act. When a defendant purposely absents himself from sentencing, especially with the goal of

---

[12] "Sentence shall be imposed without unreasonable delay. If a defendant claims that the sentence has been unreasonably delayed, he may invoke the supervisory jurisdiction of the appellate court."

[13] Defendant relies on *State v. McQueen*, 308 So. 2d 752, (La. 1975) wherein the Louisiana Supreme Court vacated the multiple offender sentence because the State unreasonably delayed filing the multiple offender bill for over three years.

[14] *See State v. Watkins*, 2007-0789, (La. App. 4 Cir. 11/21/07), 972 So. 2d 381.

11

evading that sentence, he is not entitled to claim he has been prejudiced by the delay.[15] Thus we find that this assignment of error is without merit.

## Conclusion

In accordance with the aforementioned, we conclude that Defendant is responsible for the loss of his trial transcripts because of his flight from justice and subsequent inaction on this pending case. Hurricane Katrina, which occurred nearly six (6) years after his flight was the method of the records destruction, not the cause. Moreover, we find that Defendant did not suffer an unreasonable delay in sentencing when the delay was due to his absenting himself from this jurisdiction. Thus, we conclude that Defendant is not entitled to the dismissal of his convictions and sentences.

For the foregoing reasons, we amend the sentence to reflect Defendant's sentence of eight (8) years at hard labor is to be served without benefit of probation, parole, or suspension of sentence. In all other respects the convictions and sentences imposed by the trial court are affirmed.

**SENTENCE AMENDED; AFFIRMED AS AMENDED**

---

[15] "[W]illful flouting of the judicial system on the part of one seeking appellate redress should not go wholly unrecognized." *United States v. DeValle*, 894 F.2d 133, 138 (5th Cir. 1990) ("Wherein the court found that sentencing should have been postponed until the fugitive defendant was returned to custody noting that such postponements may be wind up "quite lengthy").