SANDRA CABRINA JENKINS, Judge.
J^This appeal arises from a judgment of eviction resulting from a breach of a written lease agreement between the parties. The terms of the lease provided that no pets would be allowed in the leased premises without the prior written approval of the landlord. The trial court rejected the *255 tenant’s argument that an eviction would violate federal anti-discrimination and housing laws allegedly allowing her to maintain a pet as an emotional support animal. For the reasons discussed herein, the judgment of the trial court is affirmed.
BACKGROUND
Elena Mazzini is the owner of property located on St. Charles Avenue and leased to the Appellant, Karen Strathman, who resided at the property "with her dog. On February 4, 2013, Ms. Mazzini initiated eviction proceedings in the First City Court for the Parish of New Orleans alleging that Ms. Strathman violated the terms of her lease agreement which prohibit a tenant from having a dog on the property.
|2Under a section entitled, “PETS,” the lease agreement dated April 16, 2009, states:
No pets shall be allowed on the premises at any time. However, this provision shall not preclude Lessor from modifying any lease to allow pets by mutual written agreement between Lessor and Lessee.[1]
The lease further provides:
Should the Lessee at any time violate any of the conditions of this lease ... and should such a violation continue for a period of five days after written notice has been given Lessee (such notice may be posted on Lessee’s door) or should such violation again occur after written notice to cease and desist from such activity or disturbance, then, Lessee shall be in default and Lessor shall have the right to demand the rent for the whole unexpired term of this lease which at once becomes due and payable or to immediately cancel this lease and obtain possession of the premises in accordance with the provisions of Article 4701 et. seq. of Louisiana Code of Civil Procedure, or to exercise any further rights granted by this lease or available by law.
In her answer to the petition for eviction filed on February 13, 2013, Ms. Strathman argued that the owner was not entitled to possession of the premises because the terms of the lease had not expired; because she had not been given a thirty-day notice prior to the termination of the lease; and because she had a prescription that allowed her to have a dog as an “Emotional Support Animal” pursuant to the Fair Housing Amendments Act of 1988[2] (FHA) and the Americans with Disabilities Act (ADA).[3]
Attached as an exhibit to Ms. Strath-man’s answer was a letter from a licensed social worker stating that Ms. Strathman was a patient under her care who, “[d]ue to emotional issues/illness ... has certain limitations coping with stress/anxiety, etc.” The letter further stated that “[i]n order to help alleviate these ^difficulties, and to enhance her ability to live independently and to fully use and enjoy the dwelling,” she was prescribing an emotional support animal to assist Ms. Strathman in coping with her disability. The letter dated January 15, 2013, was directed to the owner or administrator of property and sworn to and prescribed before Ms. Strathman’s attorney. In her pleadings, Ms. Strathman refers to the letter as a “Prescription Affidavit.”
*256 During the eviction hearing held on February 13, 2013, Ms. Mazzini objected to the entry of the “Prescription Affidavit” on the grounds that it was not credible evidence, that it was hearsay, and that the first time she saw the affidavit was the morning of the hearing. The trial court reviewed the affidavit, noting that the social worker who created it was not present to testify regarding the information contained therein; consequently, the trial court excluded the affidavit on the grounds that it was inadmissible hearsay.
After hearing testimony from Ms. Strathman and argument of counsel, the trial court rendered judgment in favor of the owner, Ms. Mazzini. In doing so, the trial court explicitly rejected Ms. Strath-man’s claim that she had a disability for which her landlord was required to make special accommodations under the law. This appeal followed.[4]
|4LAW and analysis
Standard of Review
We review factual findings of the lower court under the manifest error standard of review. Applying that standard, we must first find from the record that there is a reasonable factual basis for the lower court’s findings of fact; second, the record must establish that the lower court’s findings are not manifestly erroneous or clearly wrong. Mart v. Hill, 505 So.2d 1120, 1127 (La.1987). Factual findings should not be reversed on appeal absent manifest error. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). As long as the trier of fact’s findings are reasonable in light of the record as a whole, we will affirm. Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106, 1112 (La.1990).
Affidavit of Social Worker
By her first assignment of error, Ms. Strathman claims that the trial court erred by excluding from evidence the alleged “Prescription Affidavit” of Nancy Timm, LCSW. Our review of the record reveals that the trial court examined the document at the eviction hearing, over the objection of the owner, and then excluded the document as inadmissible on the basis that it was hearsay. Thereafter, Ms. Strathman failed to proffer the document at trial as allowed by La. C.C.P. art. 1636.[5]
In Ritter v. Exxon Mobile Corporation, 2008-1404 (La.App. 4 Cir. 9/9/09), 20 So.3d 540, 546, we explained the implications of failing to proffer evidenced deemed inadmissible, stating:
| sIt is well settled that “evidence not properly and officially offered and introduced cannot be considered, even if physically placed in the record. Documents attached to memoranda do not constitute evidence and cannot be considered as such on appeal.” Denoux v. Vessel Management Services, Inc., 2007-2143 (La.5/21/08), 983 So.2d 84. When the trial judge rules the evidence is inadmissible, a proffer (offer of proof) can be made. La. C.C.P. art. 1636. It *257 is incumbent upon the party who contends his evidence was improperly .excluded to make a proffer, and if he fails to do so, he cannot contend such exclusion is error. Grusich v. Grusich, 447 So.2d 93 (La.App. 4 Cir.1984).
See also, McLean v. Hunter, 495 So.2d 1298 (La.1986) (Explaining that purpose of a proffer is to preserve evidence excluded by the trial court so that the evidence is available for appellate review).
Because Ms. Strathman failed to proffer the “Prescription Affidavit” after the trial court excluded it as inadmissible hearsay, she is precluded from raising the issue of its admissibility before this Court on appeal.
Disability Status of Lessee
In Ms. Strathman’s second assignment of error, she claims that the trial court erred in finding that she was not disabled and therefore not qualified to keep her dog under the federal FHA and ADA.
Ms. Strathman testified on her own behalf at the hearing. The dog, described by the court as a “tiny little dog,” was allowed to enter the court with her. According to Ms. Strathman, she is disabled because she suffers from severe anxiety and severe allergies, which cause nausea and anaphy-laxis. She claimed that she was unable to work and supports herself from savings. Ms. Strathman advised the court that the dog helps her because it gets her outdoors and detracts attention away from her. While evidence revealed that Ms. Strath-man had obtained |fipermission to keep two cats in her unit, she advised the court that her eats could not serve as emotional support animals because they were inside pets that did not require her to go outside. Ms. Strathman was of the opinion that she did not need to be medically diagnosed with a disability because the dog is an emotional support dog, which is distinguishable from an ADA service dog.
The FHA prohibits discrimination “against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap.” 42 U.S.C. § 3604(f)(2). A landlord engages in unlawful discrimination under if FHA if he or she refuses “to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling.” 42 U.S.C. § 3604(F)(3)(B).
In order to establish a prima facie ease against Ms. Mazzini for failure to accommodate her disability under the Section 3604(F)(3)(B) of the FHA, Ms. Strathman must have been able to show, at minimum, the following:
(1) That she suffers from a disability within the meaning of 42 U.S.C. § 3602(h);
(2) That the owner knew of her disability or reasonably should be expected to know of it;
(3) That an accommodation may be necessary to give the resident an equal opportunity to use and enjoy the dwelling;
(4) That the requested accommodation is reasonable; and
(5) The owner refused to make the accommodation.
Overlook Mut. Homes, Inc. v. Spencer, 666 F.Supp.2d 850, 855 (S.D.Ohio 2009), aff'd, 415 Fed.Appx. 617 (6th Cir.2011) (quoting DuBois v. Assoc. of Apartment Owners of 2987 Kalakaua, 453 F.3d 1175, 1179 (9th Cir.2006)).[6]
*258 The lower court found that Ms. Strathman failed to satisfy the first prong of this test by showing that she suffered from a disability. Pursuant to 42 U.S.C. 3602(h), a person is considered handicapped or disabled[7] under the FHA when the person has “(1) a physical or mental impairment which substantially limits one or more of such person’s major life activities, (2) a record of having such an impairment, or (3) being regarded as having such an impairment.”
The FHA defines a “handicapped” person as one who has: (1) a physical or mental impairment which substantially limits one or more of such person’s major life activities; (2) a record of such impairment; or (3) is regarded as having such impairment. 42 U.S.C. 3602(h)(1) — (3). The term, “disability” has the same definition under the ADA.[8] 42 U.S.C. § 12102(1).
In the present case, Ms. Strath-man alleged that she had an actual disability. However, “merely having a disability does not make one disabled” under disability discrimination laws. Beaumont v. Exxon Corp., 02-2322, p. 12 (La.App. 4 Cir. 3/10/04), 868 So.2d 976, 983 (quoting Toyota Motor Mfg., Kentucky, Inc., v. Williams, 534 U.S. 184, 195, 122 S.Ct. 681, 690, 151 L.Ed.2d 615 (2002)). Rather, establishing the existence of an actual disability under the FHA and ADA involves a three step process. First, the court must determine whether the claimant’s alleged condition constitutes a mental or physical impairment. Bragdon, 524 U.S. at 632, 118 S.Ct. at 2201. Second, the court must determine whether this impairment “affects a major life activity.” Id., 524 U.S. at 637, 118 S.Ct. at 2205. Third, the court must find that the impairment placed “a substantial limit on the major life activity” asserted. Id., 524 U.S. at 639, 118 S.Ct. at 2205. The term, “major life activity” is generally defined to include “caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working,” but is not limited to these tasks. 42 U.S.C.A. 12102(2)(A).
Based on the record before us, there is insufficient evidence to disturb the trial court’s finding that Ms. Strathman failed to satisfy her burden of proving that she had a disability which her landlord failed to accommodate for. Although Ms. Strathman testified that she suffered from allergies and depression, she did not introduce any medical evidence at trial to substantiate these allegations. In addition, there was no evidence to corroborate Ms. Strathman’s subjective testimony that her alleged ailments substantially limited any of her major life activities. Depression is not per se a disability and in order for depression to constitute a disability under the ADA, it must substantially limit a major life activity. Pritchard v. The Southern Company Services, et al., 92 F.3d 1130, 1132 (11th Cir.1996). The same *259 holds true for Ms. Strathman’s claim that she suffers from severe allergies.[9]
Further, we note that there is nothing in the record to indicate that the owner knew of Ms. Strathman’s alleged disabilities or was reasonably expected to know about— them as required by the second prong of the test. Overlook, supra, 666 F.Supp.2d at 855. At the eviction hearing, Ms. Strathman testified that she had resided in the apartment for approximately four years, but that she had only had the dog for a few months. In addition, Ms. Strath-man did not dispute her landlord’s allegation that she was first made aware of Ms. Strathman’s alleged disability and her purported need for an emotional support animal on the morning of the hearing. Instead, Ms. Strathman’s counsel explained that the information was not provided beforehand because it had not been requested.
Under the facts of this case, we cannot say that the trial court erred in concluding that the landlord, Ms. Mazzini, was under no obligation to deviate from the terms of their lease agreement and allow Ms. Strathman to keep dog on the premises. “Contracts have the effect of law for the parties and may be dissolved only through consent of the parties or on grounds provided by law.” La. C.C. art. 1983. Absent law to the contrary, the contract must be enforced as written.
The trial court’s judgment is affirmed.
|1(>Attorney Fees
Counsel for Ms. Mazzini filed an answer to the appeal, seeking an award for attorney fees incurred in responding to the appeal. The lease executed by the parties clearly provided that in the event an attorney is employed to protect the rights of the Lessor, Lessee would be responsible for the fees of the attorney.
According to the its plain language, “[a]t the expiration of [the] lease, or its termination for other causes, Lessee is obligated to immediately surrender possession, and should he fail to do so, he consents to pay ... attorney’s fees.” In the section entitled, “ATTORNEY FEES,” the lease more specifically states:
Lessee further agrees that if an Attorney is employed to protect the rights of the Lessor hereunder, Lessee will pay the fee of such attorney. Such fee is hereby fixed at twenty-five (25%) of the amount claimed or a minimum of $300.00 whichever is greater.
In the interpretation of contracts, the specific controls the general. Corbello v. Iowa Production, 02-0826, p. 24 (La.2/25/03), 850 So.2d 686, 704, clarified on rehearing on other grounds, 02-0826 (La.6/20/03), 850 So.2d 686 (per curiam). Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract. La. C.C. art. 2050; Lee v. First National Bank of Commerce, 04-659 (La.App. 5 Cir. 2/15/05), 893 So.2d 1030, 1034, writ denied, 05-0907 (La.5/20/05), 902 So.2d 1054. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties’ intent. La. C.C. art. 2046.
Inin support of the claim for attorney fees, Ms. Mazzini’s attorney has submitted an affidavit setting forth the time involved in the appeal of this matter and requesting a reimbursement for resultant legal fees.[10] *260 While we find that the time spent and reimbursement requested would otherwise be reasonable based on the complexities of the issues involved in this case, Ms. Mazzini’s recovery for attorney fees is clearly limited to 25% of the amount claimed or $300.00, whichever is greater. Nevertheless, because this appeal stems from eviction proceedings wherein no monetary claim for damages have been sought by the landlord, based on the language of the contract, we award Ms. Mazzini attorney fees in the amount of three hundred dollars ($300.00).[11]
MOTION TO WITHDRAW
After instituting this appeal and submitting the appellant’s brief, Ms. Strathman’s attorney filed a motion to withdraw alleging the development of a conflict of interest. Due to the alleged conflict, and considering the lack of any opposition to the motion, counsel’s motion to withdraw is granted. See generally, Louisiana Rules of Professional Conduct, Rule 1.7 (conflict of interest) and Rule 1.16 (declining or terminating representation).
| ^DECREE
■ For the reasons discussed herein, we affirm the judgment of the trial court granting the Rule to Evict and assessing court costs against the appellant, Ms. Karen Strathman. In addition, three hundred dollars ($300.00) in attorney fees and all costs of this appeal are assessed to Ms. Strathman.
Appellate counsel’s motion to withdraw as attorney of record for appellant, Karen Strathman, is granted.
AFFIRMED; MOTION TO WITHDRAW GRANTED.
BELSOME, J., concurs in the result.

.According to two separate addendums to the lease dated and signed April 16, 2009, and March 30, 2012, it was agreed that Ms. Strathman would be allowed to have two cats after posting the requisite deposit; all other terms and conditions of the residential lease were to remain the same.

. 42 U.S.C. § 3601 et seq., as amended by the Fair Housing Amendments of 1988.

. See, 42 U.S.C. § 12101 et seq.

. Notice of the judgment was mailed to the parties on February 13, 2013, and Ms. Strath-man filed a Motion for Suspensive Appeal on February 14, 2013, requesting that the court set timely rented payments as security for the appeal. In response to the Order of Suspen-sive Appeal, Ms. Mazzini filed a Rule to Test the Sufficiency of Bond, which was set for hearing on the return date, March 11, 2013. The record is incomplete regarding the judgment and/or what transpired and the parties have not raised the sufficiency of bond as an issue on appeal.

. La. C.C.P. art. 1636(A) states: "When the court rules against the admissibility of any evidence, it shall either permit the party offering such evidence to make a complete record thereof, or permit the party to make a statement setting forth the nature of the evidence.”

. See also, Stevens v. Hollywood Towers and Condominium Assoc., 836 F.Supp.2d 800, 808 *258 (N.D.Ill.2011).

. For purposes of discussing the FHA, "handicap” and "handicapped” can be used interchangeably with "disability” and "disabled.” See e.g., Giebeler v. M & B Associates, 343 F.3d 1143, 1146 n. 2 (9th Cir.2003).

. See, e.g., Bragdon v. Abbott, 524 U.S. 624, 631, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998) (Explaining that "[t]he ADA’s definition of disability is drawn almost verbatim” from the definitions in the Rehabilitation Act and the Fair Housing Amendments Act of 1988 and explaining that "Congress’ repetition of a well-established term carries the implication that Congress intended the term to be construed in accordance with pre-existing regulatory interpretations.” (Internal citations omitted)).

. The Supreme Court defines the term, “substantially limits” to mean that a life activity must be limited considerably or to a large degree. Toyota Motor, supra, 534 U.S. at 196, 122 S.Ct. at 681.

. Ms. Mazzini requests a total One Thousand, Two Hundred Twenty-Five Dollars ($1,225.00), in legal fees.

. In awarding attorney fees, we are also mindful that the FHA authorizes the award of attorney fees and costs to the prevailing party in an FHA discrimination case. 42 U.S.C. 3613(c)(2). In such instances, the Supreme Court has held that a fee award to a prevailing defendant is appropriate only when an action is " ‘unreasonable, frivolous, meritless or vexatious. ” Christiansburg Garment Co., 434 U.S. at 421, 98 S.Ct. 694 (quoting Carrion v. Yeshiva Univ., 535 F.2d 722, 727 (2d Cir.1976)). It also explained that the purpose of the award is to "protect defendants from burdensome litigation having no legal or factual basis.” Id. at 420, 98 S.Ct. 694. Because attorney fees in this case are awarded based on contract, we do not reach a determination of whether they are otherwise recoverable in appeal of eviction proceedings.