Judge Madeleine M. Landrieu.
|, Damien Smith appeals the trial court’s judgment partitioning community property between him and his former wife, Mitzi Dunn Smith. For the reasons that follow, we affirm.
FACTS AND PROCEEDINGS BELOW
Mr. Damien Smith and Ms. Mitzi Dunn Smith (hereinafter “Ms. Dunn”) were married on August 28, 1999. On August 8, 2007, Ms. Dunn filed a petition for divorce that was granted on September 3, 2009.[1] On May 8, 2014, the parties proceeded to trial to partition their community property.[2]
The community to be partitioned contained two pieces of immovable property owned by the parties at the time of their divorce: 7710/12 Mill Street (a double home) and 7802 Michigan Street, both located in New Orleans. Other community assets to be partitioned included several vehicles and a piece of immovable property located in Texas.
On November 3, 2014, the trial court rendered a written judgment partitioning the community assets and liabilities and ruling upon the parties’ Irrespective claims for reimbursement. Mr. Smith filed a motion for a new trial and requested written reasons for judgment. After several continuances, the motion for new trial was heard on May 13, 2015. At the close of the hearing, the trial court denied Mr. Smith’s motion for new trial. On that same day, the trial court issued written reasons for the judgment partitioning the community. Mr. Smith now appeals- the judgment partitioning the community.
ISSUES
Mr. Smith contends that the trial court’s rulings on three specific issues are erroneous:
1. The trial court’s finding that Mr. Smith was not entitled to one-half of the funds received by Ms. Dunn from the 2007 refinancing of the mortgage on the Mill Street property.
2. The trial court’s finding that. Mr. Smith was entitled to only $5,000 as reimbursement for one-half of the rental income generated by the Mill Street property after the filing of the divorce.
3. The trial court’s finding that Mr. Smith was not entitled to one-half of the value of the community-owned 2006 BMW at the time of the termination of the community but that he was required to reimburse Ms. Dunn for one-half of the debt burdening this vehicle.
STANDARD OF REVIEW
A trial court’s rulings regarding the partitioning of community property are reviewed under the “manifest error” standard, granting great discretion to the trial court. Raymond v. Fluellen, 2011-1290 (La.App. 4 Cir. 3/7/12), 88 So.3d 652, 654. Applying this standard requires that “we *1010 must first find from the record that there is a reasonable factual basis for the lower court’s findings of fact; second, |sthe record must establish that the lower court’s findings are not manifestly erroneous or clearly wrong.” Mazzini v. Strathman, 2013-0555 (La.App. 4 Cir. 4/16/14), 140 So.3d 253, 256. Reasonable findings of fact and credibility assessments made by the trial court may not be set aside by a court of appeal. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989).
DISCUSSION

I. Refinancing of the Mill Street Property

As previously stated, at the time of their divorce, the parties owned two houses in New Orleans. From the time the petition for divorce was filed until the rendering of the judgment partitioning the community, Ms. Dunn had exclusive use of the Mill Street property and Mr. Smith had the exclusive use of the Michigan Street property.
Two months after filing her petition for divorce, Ms. Dunn refinanced the Mill St. property, securing a loan of $70,000.00 and using $14,784.70 of the loan proceeds to satisfy an existing line of credit in favor of Capitol One Bank. It is not disputed that the existing line of credit was a community debt. Ms. Dunn testified that she used the net proceeds of the loan (after paying the Capitol One line of credit) to pay “settlement” costs associated with the refinancing, to make repairs to the Mill Street property, and to pay for childcare and medical expenses for the parties’ young son. She also testified that she used “about $8,000.00” of the loan proceeds for her personal benefit. By the time the parties proceeded to trial on the partition of their community in 2014, Ms. Dunn had repaid, with her separate funds, the $70,000.00 loan in its entirety.
At trial, Mr. Smith sought reimbursement of $27,500.00, which he claimed was one-half of the net proceeds received by Ms. Dunn from her refinancing of the I ¿Mill St. property.[3] He argued that the loan proceeds belonged to the community because Ms. Dunn had encumbered the Mill Street property without his concurrence in violation of Louisiana Civil Code article 2369.4.[4] He further argued that Ms. Dunn’s testimony that she had used most of the loan proceeds to pay community expenses was not credible because she was able to produce receipts for only about $4,000.00 of these expenses. Ms. Dunn maintained that the loan proceeds were her separate property because the community had been terminated retroactive to the date of filing for divorce, and the loan had been procured by her after that date. Ms. Dunn further argued that because she had used her separate funds (the proceeds of the loan) to pay off a community debt (the line of credit), she was entitled to reimbursement from Mr. Smith for one-half the sum she had paid to satisfy that debt.[5]
The trial court rendered judgment in favor of Ms. Dunn, stating in written reasons for judgment that it found “the loan proceeds and the associated debt to be *1011 separate .from the community.” While the trial court recognized that Ms. Dunn had secured this loan in violation of Louisiana Civil Code article 2369.4, which prohibits a spouse from encumbering former community property without the concurrence of the other spouse, it held that awarding one-half of the loan proceeds to Mr. Smith was not the appropriate remedy for Ms. Dunn’s violation under the facts of this case.
IfjWe find no manifest or legal error in the trial court’s rulings with regard to the loan proceeds. We agree with the trial court that there was no legal basis for the post-termination loan obtained by Ms. Dunn to be attributed to ,the community. An obligation attributed to the community is one “incurred by a spouse during the existence of a community property regime for the common interest of the spouses -or for the interest of the other spouse.” La. C.C. art. 2360 (Emphasis added). Here, Ms. Dunn secured the $70,000,00 loan after she filed her petition for divorce in August of 2007. Upon divorce, the community was terminated retroactive to that date.
According to the official comments to La. C.C. art. 2363 (which pertains to separate obligations): “Once the community regime has terminated, an obligation incurred by a spouse is neither separate nor community. It has no impact upon the community property regime, so it is not properly classified as either type of obligation.” La. C.C. art. 2363, Comment (a), Revision Comments—2009 (Emphasis added). Therefore, because Ms. Dunn’s refinancing occurred after the termination of the community, the trial court did not err by holding that the loan proceeds did not belong to the community and thus denying Mr. Smith’s claim for one-half of the proceeds. Because the loan proceeds were not community funds, Mr. Smith was not entitled to any portion of the proceeds regardless of how Ms. Dunn had used them.
The trial court also correctly acknowledged that Ms. Dunn had secured this loan in violation of Civil Code article 2369.4, which states:
A spouse may not alienate, encumber, or lease former community property or his undivided community interest in that property without the concurrence of the other spouse, except as provided in the following Articles. In the absence of such concurrence, the alienation, encumbrance, or lease is a relative nullity.
| (¡Louisiana Civil Code article 2033 provides, in pertinent part, that a relatively null contract that has been declared null by the court “is deemed never to have existed. The parties must be restored to the situation that existed before the contract was made.”
The record shows that Ms. Dunn secured this loan on former community property without Mr. Smith’s concurrence in October of 2007. There was no court action by Mr. Sniith to have the transaction declared a relative nullity pursuant to Civil Code article 2369.4. If the loan had been declared a relative nullity, however, Mr, Smith’s remedy would have been to be restored to the position he was in before the loan was taken out. By the time of the partition trial, when Mr. Smith first complained about the loan, Ms. Dunn had paid the entire loan back. By doing so, she not only restored him to his former position, but actually improved Mr. Smith’s position by paying off the line of credit formerly burdening the property (a community debt). Restoring the parties to the situation that existed before the loan occurred therefore required Mr. Smith to reimburse Ms. Dunn for one-half of this community debt, which reimbursement is not challenged by Mr. Smith on appeal. The trial *1012 court correctly held that Mr. Smith was not entitled to any further remedy for Ms. Dunn’s violation of Article 2369.4.

II. Rental Income Associated with the Mill Street Property

In his second assignment of error, Mr. Smith asserts that he was entitled to more than the $5,000.00 the trial court awarded him as reimbursement for one-half the rental income generated by the Mill Street property after the termination of the community. At trial, Ms. Dunn testified that after the termination of the community, she had allowed her twenty-two year old daughter to live in one side |7of the home rent free for “a couple of years,” and that during some of the remaining time, the rental side was in need of repairs and unlivable. Ms. Dunn testified that she had collected a total of $10,000.00 in rental income during the period between the termination of the community and the partition trial. Mr. Smith testified that a friend of his sister’s had lived in the rental side of the home for about one year and had paid rent to Ms. Dunn using a Section 8 voucher, but he did not know how much rent. He also testified that he believed Ms. Dunn’s daughter had a roommate living with her during the time she resided in the rental side, and that the daughter and her roommate had paid rent to Ms. Dunn. Mr. Smith did not produce any evidence to substantiate his testimony.
The trial court noted that after the termination of the community property regime, the provisions governing co-ownership apply to former community property. See La. C.C. art. 2369.1. The court further noted that pursuant to Louisiana Civil Code article 798, co-owners share the fruits and products of the co-owned property in proportion to their ownership, thus entitling Mr. Smith to fifty percent of the amount of rent earned by the property, or $5,000.00. Finally, the court noted that Mr. Smith had not submitted any evidence to controvert Ms. Dunn’s testimony regarding the condition of the house or the amount she received in rent.
On appeal, Mr. Smith contends that by failing to keep one side of the house rented full-time, Ms. Dunn breached her fiduciary duty to prudently manage the parties’ former community property. See La. C.C. art. 2369.3. He argues, therefore, that the trial court should have awarded him one-half of the rental value of the property during the 'relevant time period, which he testified was approximately $82,000.00.
|sThe spouse alleging improper management bears the burden of proving that the former spouse failed to manage and prudently preserve the former community property prior to partition. Ellington v. Ellington, 36,943, p. 16 (La. App. 2 Cir. 3/18/03), 842 So.2d 1160, 1172. Because Mr. Smith provided no evidence to contravene Ms. Dunn’s testimony, we cannot say that the trial court committed manifest error by crediting her testimony. We therefore find no error in the trial court’s decision awarding Mr. Smith only a $5,000.00 reimbursement.

III. 2006 BMW

On August 8, 2007, at the termination of the community, the trial court issued an eighteen-month protective order granting Ms. Dunn the exclusive use of the parties’ community-owned 2006 BMW. Sometime in 2008, the vehicle was totaled in an accident while being driven by a person other than Ms. Dunn or Mr. Smith. At the time of the accident, the debt burdening the vehicle was greater than the value of the vehicle. As a result of the accident, the primary insurance policy on the vehicle paid $18,517.18 and a GAP insurance policy paid $7,438.62, leaving a remaining debt balance of $1,914.76 burdening the vehicle. Ms. Dunn paid the remaining debt balance in its entirety with her separate funds.
*1013 On appeal, Mr. Smith asserts that the trial court erred in finding that he was not entitled to reimbursement for one-half of the value of the BMW, but that he was required to reimburse Ms. Dunn for one-half of the debt burdening the vehicle at the time it was destroyed in the accident. In support of this assertion, Mr. Smith argues that Ms. Dunn’s negligence in allowing persons not authorized by him to drive the vehicle resulted in the loss of the vehicle. He further argues that this fact, in itself, evidences Ms. Dunn’s failure to act as a prudent administrator of the community-owned vehicle. At trial, Mr. Smith provided no evidence that the 13vehicle was being driven without Ms. Dunn’s permission or that her having given permission to that particular driver was negligent. He testified that he did not know who was driving the car when it was involved in the accident.
As stated previously, the burden of proof in alleging mismanagement of former community property lies with the spouse making the allegations. Ellington, 36, 943, p. 16, 842 So.2d at 1172. Because Mr. Smith did not present any evidence to support his contention that Ms. Dunn was negligent or acted as an imprudent manager, we conclude that the trial court did not commit manifest error by ordering Mr. Smith to reimburse Ms. Dunn for one-half of the amount that she had paid to settle the community debt balance on the vehicle or by denying Mr. Smith reimbursement for one-half of the vehicle’s pre-accident value.
CONCLUSION
For the reasons stated, we affirm the trial court’s judgment.
AFFIRMED.

. According to the record, the parties have one child, a son, who was eight years old at the time the petition for divorce was filed. There are no issues regarding his custody or support pertinent to this appeal.

. There is a discrepancy 'in the record as to the exact date of trial. The transcript reflects the trial date as May 8, '2014, whereas the judgment states the trial was held on May 14, 2014.

. The loan of $70,000 less community property debt of $14,784.70 is $55,215.30. This sum divided by 2 is $27,607.00.

. Although neither party disputes that the Mill Street property was community property purchased during their marriage, testimony at trial indicated that the property was purchased in Ms, Dunn’s name only.

.On appeal, Mr. Smith does not challenge Ms. Dunn's entitlement to one-half of the amount she used to pay off the existing line of credit on the property. Ms. Dunn did not seek reimbursement for any of the other community expenses that she testified she had paid using the proceeds of the loan.