## STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

**24-110**

**BALL ENTERPRISES LLP, ET AL**

**VERSUS**

**VAN GOSSEN INDUSTRIES, LLC**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 277,627
HONORABLE MONIQUE F. RAULS, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**VAN H. KYZAR**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Shannon J. Gremillion, D. Kent Savoie, and Van H. Kyzar, Judges.

**AFFIRMED.**

Aaron L. Green
Vilar & Green, LLC
1450 Dorchester Drive
P.O. Box 12730
Alexandira, LA 71315
(318) 442-9533
Counsel for Plaintiffs/Appellants
        Ball Enterprises, LLP
        Curtis Robertson


Jeremy Cedars
Fine Legal Services, LLC
4615 Parliament Drive, Suite 202
Alexandria, LA 71303
(318) 767-2226
Counsel for Defendant/Appellee
        Van Gossen Industries, LLC

**KYZAR, Judge.**

Ball Enterprises, LLP, and Curtis Robertson[1] (collectively, "Plaintiffs") appeal the denial of a Rule to Evict Defendant, Van Gossen Industries, LLC, holding that Defendant did not commit a default of the lease. For the following reasons, we affirm.

## DISCUSSION OF THE RECORD

On September 27, 2018, Plaintiffs and Defendant entered into a Retail Lease Agreement for a 12,480 square foot building located at 2878 Highway 28 East, Pineville, Louisiana. The property was owned by Plaintiffs, Ball Enterprises, LLP, which was a partnership between Curtis Robertson and Richard Primeaux. The lease was for a period of five years with an option to renew and extend the lease for an additional five-year period. Regarding the payment of the monthly rent, Section three of the lease provided:

> 3. RENT
>
> During the primary term of this Lease, Tenant agrees to pay Landlord a monthly rental of $3500 per month payable on or before the 1st day of each month. Rental payments should be <u>mailed to Landlord at P O Box 628, Ball, LA, 71405</u>[2]. If rental payment is not made by the 5th of the month, a late fee of $25.00 will be due in addition to the regular rental amount. A deposit of $3500 will be paid to Landlord when the Lease is signed by all parties.

Around the first of October 2022, Mr. Robertson went to the Defendant's store and advised that he had bought out Mr. Primeaux from the partnership and that the rent payments should no longer be forwarded to the post office box but should be forwarded to his account at Southern Heritage Bank. Ms. Phyliss Van Gossen, a

---

[1] Defendant filed an exception of no right of action regarding Mr. Robertson since the property was owned by Ball Enterprises LLP.

[2] This was Mr. Primeaux's post office box.

member of Van Gossen Industries, testified that she requested that Mr. Robertson provide her with something in writing via email confirming that Mr. Primeaux was no longer a partner and that the rental checks should be sent to a different location. Mr. Robertson never provided the Defendant with the bank account number or verification that Mr. Primeaux was no longer his partner. Also, the Plaintiffs never advised the Defendant in writing that the post office box listed in the lease was no longer valid.

As it had done with all the rent payments, Defendant forwarded a certified check via certified mail to the post office box specified in the rental agreement to pay for the November 2022 rent. Defendant received a green card signed by Mr. Primeaux on November 2, 2022, confirming his receipt of the November rental payment.

Defendant forwarded a certified check dated November 28, 2022, for the December rental payment via certified mail to the post office box specified in the lease agreement. This rental payment was returned to the Defendant by the post office inscribed, "Return to Sender," "Refused," and "Unable to Forward". Likewise, the January payment was refused.

In response to the returned checks, and not wanting to be evicted for nonpayment of the rent, the Defendant filed an ex parte Motion and Order to Deposit Rental Checks into the Registry of the Court. The ex parte order was signed on December 29, 2022. The Plaintiffs were not advised of the filing of the ex parte motion and when the Plaintiffs became aware of the ex parte Motion and Order, he filed a Motion to Vacate the order. A consent judgment vacating the ex parte order was signed on May 1, 2023. Upon having the ex parte order vacated, the rental payments were deposited in the Defendant's attorney's trust fund account. It is not

known why the parties did not arrange to have the payments forwarded to the Plaintiffs, but apparently the Plaintiffs were aware the lease payments were being made to the trust account.

On July 3, 2023, the Plaintiffs forwarded the Defendant a Notice of Default advising that Defendant had not paid rent since October 2022. The letter also stated that the lease provided that if a rental payment was not made by the fifth of the month, a late fee of $25.00 would be due in addition to the regular rent payment. Finally, the letter stated: "Additionally, in accordance with Section 16 of the Lease, please consider this as Ball Enterprises LLP written designation of a new address for all notices and rent payment contemplated under the lease. The new address is as follows: 420 Shanghai Road, Ball, La. 71405-3301".

After Defendant received receipt of the letter containing written notice of the new address, Plaintiffs received payment in the amount of $28,000.00 on July 6, 2023, from Defendant's attorney representing the rent due since November 2022.

On August 14, 2023, the Plaintiffs' attorney forwarded to Defendant a Notice to Vacate Premises and of Termination of Rental Lease Agreement. The letter indicated that rent was due for November 2022, along with a $25.00 late fee as well as late fees in the amount of $200.00 for the period of December 2022 to July 2023. Because the Defendant had not paid all sums due within 30 days from receipt of the Notice of Default as specified in the lease agreement, Plaintiffs terminated the lease. Plaintiffs filed a Rule to Evict Defendant on August 21, 2023, and in response the Defendant filed an answer and reconventional demand[3].

---

[3] There is a separate lawsuit between the parties regarding the violation of peaceful possession, acceptance of lease payments and breach of contract. Also, the reconventional demand was met with Exceptions of Lis Pendens and Improper Cumulation of Actions.

The eviction hearing was held November 15, 2023. After reviewing the evidence and testimony of the witnesses, the trial court rendered judgment denying the Rule to Evict. The Plaintiffs timely filed this appeal urging the following assignments of error:

1. The trial court committed legal error when it denied [Plaintiffs'] request for eviction.

2. The trial court committed legal error when it determined that an unlawfully obtained ex parte order (which is an absolute nullity) "was valid until it wasn't valid" and relied on said order to justify [Defendant's] delay in paying [Plaintiffs'] rent for nine months, even going so far as [to] declare that the unpaid rent was not "late", so that no late fees were owed and [Defendant] would not be in default.

3. The trial court committed legal error when it determined that the "November 2022 payment was not in default, and nor was it late."

4. The trial court committed legal error when it held that "because of a failure other than [Defendant's] failure, the payments were not being made so the court finds that late fees are not owed."

5. The trial court committed legal error in [failing to grant] [Plaintiffs'] request for an adverse presumption against [Defendant] when it failed to introduce evidence that was in its exclusive control.

**OPINION**

In determining the appropriate standard of review in this matter, the fourth circuit in *JoAnn Place v. Ricard*, 22-456, pp. 10–11 (La.App. 4 Cir. 12/27/22), 356 So.3d 518, 526, explained:

> In an eviction proceeding, the appellate court reviews the trial court's factual findings for manifest error. *235 Holdings, LLC v. 235 Enters.*, 2020-0658, p. 5 (La.App. 4 Cir. 12/15/21), 334 So.3d 862, 866, (citing *Armstrong Airport Concessions v. K-Squared Rest., LLC*, 2015-0375, p. 9 (La.App. 4 Cir. 10/28/15), 178 So.3d 1094, 1100). Under this standard of review, an appellate court "must ... find from the record that there is a reasonable factual basis for the [trial] court's findings of fact [,]" and "the record must establish that the [trial] court's findings are not manifestly erroneous or clearly wrong." *Guste Homes Resident Mgmt. Corp. v. Thomas*, 2020-0110, p. 8 (La. App. 4 Cir. 7/29/20), 302 So.3d 1181, 1187 (citing *Mazzini v. Strathman*, 2013-0555, p. 4 (La. App. 4 Cir. 4/16/14), 140 So.3d 253, 256). "Factual findings should not be reversed on appeal absent manifest error." *Id.* (quoting *Mazzini,*

4

2013-0555, p. 4, 140 So.3d at 256). "Where legal errors of the trial court have tainted the fact finding process" though, "the verdict below is not reviewed under the manifest error standard and, if the record is complete, the appellate court may make a *de novo* review of the record and determine the preponderance of the evidence." *Id.* at pp. 8–9, 302 So.3d at 1187 (quoting *Hous. Auth. of New Orleans v. King*, 2012-1372, p. 5 (La. App. 4 Cir. 6/12/13), 119 So.3d 839, 842).

The appellate court also reviews an eviction matter *de novo* if the appeal presents a purely legal question. *235 Holdings, LLC*, p. 5, 334 So.3d at 867 (citing *Armstrong*, 2015-0375, p. 9, 178 So.3d at 1101). Additionally, in an eviction proceeding, "when there is no dispute as to the dispositive facts, the issue can be decided as a matter of law and the review is *de novo.*" *Affordable Care, LLC v. Martin*, 54,286, p. 14 (La. App. 2 Cir. 4/13/22), 337 So.3d 615, 623 (citing *Armstrong*, 2015-0375, pp. 9–10, 178 So.3d at 1101).

In his closing argument following the eviction hearing, the Plaintiffs' attorney admitted that the proceeding was specifically for the alleged non-receipt of rent for November 2022 and for the late fee mandated by the lease. However, the Defendant presented evidence that the November certified check was mailed to the location specified in the lease and that Mr. Primeaux received it. The Plaintiffs assert that when the Defendant received the notice of default, it should have contacted its bank to confirm the certified check had cleared. The Plaintiffs' assertion is misplaced. The Defendant fulfilled its obligation under the lease by proving it made payment to the Plaintiffs at the address provided for in the lease. What the Plaintiffs or the former partner did with the payment was not for Defendant to determine once the payment was sent and received as provided for in the lease.

Mr. Robertson orally requested to have the lease payments made to a bank account because he advised that he had bought out Mr. Primeaux's interest in the partnership. However, Ms. Van Gossen requested that this be put in writing as required by the lease. Mr. Robertson did follow up with an email to Defendant to start making the rental payments to his bank account, but never provided the account

numbers nor proof that he had bought out Mr. Primeaux's interest. Despite Mr. Robertson's assertion that he had bought out Mr. Primeaux in October of 2022, Mr. Primeaux was listed as a partner of the Plaintiffs with the Secretary of State until the partnership's filing on October 17, 2023.

Additionally, Section 21 of the lease provides in pertinent part: "This lease may not be changed, modified or amended except by written instrument signed by both parties hereto." There was no modification or amendment of the lease signed by both parties changing where the rental payments were to be made. As stated by this court in *Gardiner Farms, LLC v. Advanced Agriculture, Inc.*, 17-423, p. 9 (La.App. 3 Cir. 12/13/17), 258 So.3d 769, 775: "The lease contract itself is the law between the parties; it defines the parties' respective rights and obligations so long as the agreement does not affect the rights of others and is not contrary to the public good."

The Plaintiffs chose to close the post office box specified in the lease for the payment of the rent. The Defendant attempted to make the December 2022 and January 2023 rental payments to the Plaintiffs, which were refused. In *Housing Auth. of St. John the Baptist Parish v. Shepherd*, 447 So.2d 1232 (La.App. 5 Cir. 1984), the court held that tenants could not be faulted for nonpayment of April and May rents when the landlord had refused to accept the March payments, as tender of the April and May payments would have been fruitless.

The trial court, in holding that the Defendant had committed no breach of the lease, stated:

> Okay. The Court has reviewed the evidence, and the issue is whether or not there was a default, and if there was a default, whether or not it was cured.

6

The -- for the -- the Court finds that the November 22-- 22 Rent was signed for by Mr. Primeaux. The Court realizes that Mr. Robertson stated to the Defendant that it was not -- Mr. Primeaux was no longer doing business with him. However, the Lease still had that address, and I, I'm not going to hold her responsible for what was business between the two (2) of them, Mr. Primeaux and Mr. Robertson.

She mailed the Check because what she -- she was faced with the dilemma of, okay, is Mr. Robertson telling me the truth. If I pay Mr. Robertson, and put it in this account, am I going to have a problem with one of the -- another party. She -- Mr. Primeaux could have said, Why did you put it in his personal account? So she followed the customary procedure of sending it to the P. O. Box.

So November 2022 payment was not in default, and nor was it late. Mr. Primeaux signed for it on November 2d. So that issue remains a issue for Mr. Robertson to handle and address with Mr. Primeaux.

The December 2022 payment was refused. So it was not late, so no late fee. January payment was refused. It was not late, so no late fee. The February, March, April, May, June and July payments were, of course, paid.

We're only dealing with the late fees. So we're dealing with late fees of a Hundred and Fifty Dollars ($150.00). And the -- there was an Order signed by the Court, which was valid until it wasn't valid. It was -- so, she was following -- trying to use due diligence and trying to be in compliance.

So, then in May, it was another Order signed, where the previous Order was declared invalid. But as far as -- because of her due diligence, and I'm not -- the Court finds that the payments were not late. So no late fees were owed. She was doing everything she could to make payments.

And because of a failure other than Ms. Van Gossen's failure, the payments were not being made. So the Court finds that the late fees were not owed.

You can provide a judgment. Court's adjourned.

The trial court concluded that Defendant was not in default, that eviction was not appropriate, and that no rental payments nor any late fees were owed. Our review of this matter supports the trial court's ruling. Accordingly, the judgment in favor of Defendant is affirmed.

7

## DECREE

For the foregoing reasons, the judgment of the trial court denying the petition to evict the Defendant and finding that no lease payments or late fees are due, is affirmed. Costs of this appeal are assessed to Plaintiffs, Ball Enterprises, LLP, and Curtis Robertson.

**AFFIRMED.**