ROCHELLE BROADNAX, AS TUTRIX OF HER MINOR CHILDREN, MCKENZIE BROADNAX, DEZMOND BROADNAX, CHACYEN BROADNAX AND CAYDEN GARRISON; AND DESTINEY HODGES, AS TUTRIX OF HER MINOR CHILD, CALI HODGES

VERSUS

YOUSEF ODEH LLC D/B/A HANKS SUPERMARKET AND STATE FARM FIRE AND CASUALTY COMPANY

\*      NO. 2025-CA-0188

\*

\*      COURT OF APPEAL

\*      FOURTH CIRCUIT

\*      STATE OF LOUISIANA

\* \* \* \* \* \* \*

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2021-03596, DIVISION "B"
Honorable Marissa Hutabarat
\* \* \* \* \* \*
**Judge Karen K. Herman**
\* \* \* \* \* \*

(Court composed of Judge Sandra Cabrina Jenkins, Judge Karen K. Herman, Judge Monique G. Morial)

John W. Redmann
Alejandro Cobar
Edward L. Moreno
Richard L. Root
LAW OFFICE OF JOHN W. REDMANN, LLC
1101 West Bank Expressway
Gretna, LA 70053
     COUNSEL FOR PLAINTIFFS/APPELLANTS

Paula M. Wellons
Jared A. Davidson
Deanne B. McCauley
John A. Jeansonne, III
TAYLOR WELLONS POLITZ & DUHE, LLC
1555 Poydras Street, Suite 2000
New Orleans, LA 70112
     COUNSEL FOR DEFENDANT/APPELLEE

**AFFIRMED**
**SEPTEMBER 16, 2025**

This appeal stems from the fatal shooting of Corey Garrison ("Garrison"), which occurred outside of a convenience store. Rochelle Broadnax ("Broadnax"), as tutrix of her minor children, Chacyen Broadnax and Cayden Garrison,[1] and Destiney Hodges, as tutrix of her minor child, Cali Hodges (collectively "Plaintiffs") appeal the December 17, 2024 Judgment granting summary judgment in favor of Yousef Odeh, LLC d/b/a Hanks Supermarket ("Hanks") and State Farm Fire and Casualty Company (collectively "Defendants"). For the reasons that follow, we affirm.

### STATEMENT OF FACTS AND PROCEDURAL HISTORY

On October 30, 2020, Garrison, Broadnax, and Larry Crockett ("Crockett") were patrons of Hanks when an argument ensued between Garrison and a female employee that was working behind the deli counter. Garrison and Crocket were escorted out of the store by manager Husam Odeh ("Husam") and another employee, Odeh Odeh ("Odeh"), where the verbal altercation continued. As explained in more detail below, once outside, Garrison was fatally shot by Husam.

---

[1] A Judgment was rendered on May 5, 2024 sustaining an Exception of No Right of Action as to the claims of Broadnax as tutrix of her minor children, McKenzie Broadnax and Dezmond Broadnax, initially named as plaintiffs in this action.

1

Plaintiffs filed a Petition for Damages and Wrongful Death alleging that on October 30, 2020, Broadnax, her children, Garrison, and Crocket, were picking up food from Hanks when an argument ensued between Garrison and an employee. The petition asserts that an employee [Husam] brandished a firearm and proceeded to shoot Garrison a total of six times. Plaintiffs allege various acts of negligence against Defendants including: failing to properly screen and train employees; failing to exercise caution or reasonable care under the circumstances in violation of public safety; and creating a dangerous business environment.

Defendants filed a Motion for Summary Judgment asserting that they did not owe a duty to Garrison, and that their conduct was reasonable. In support, Defendants submitted: 1) the interior video at Hanks; 2) the exterior video of the scene; 3) excerpts of the deposition testimony of Husam; 4) Excerpts of the deposition testimony of Odeh; and 5) Plaintiffs' responses to interrogatories.

Plaintiffs opposed the Motion for Summary Judgment arguing that genuine issues of material fact exist as to whether Husam and Odeh were the aggressors in the confrontation and whether Defendants breached a duty of keeping Hanks' customers free from injury or mortal harm. In support, Plaintiffs attached: 1) the deposition testimony Broadnax; 2) Crocket's affidavit; 3) the deposition testimony of Husam; 4) excerpts from the Hanks Emergency Preparedness Plan ("Preparedness Plan"); and 5) the deposition testimony of Odeh.

In Reply, Defendants objected to the introduction of the Preparedness Plan because it applied only to robberies, which is not applicable in this case. Defendants also objected to the introduction of Crockett's affidavit, asserting that it was not based on personal knowledge. More specifically, Defendants argued

2

that Crockett was attempting to "testify about the knowledge, mindset, intentions and behavior of someone other than the affiant [*i.e.*, Garrison]."

The matter was brought for trial on December 5, 2024. Judgment was rendered on December 17, 2024, granting Defendants' Motion for Summary Judgment. The Judgment further reflects that the trial court sustained Defendants' objections to the introduction of Crocket's affidavit and the Preparedness Plan. Plaintiffs did not seek to proffer these exhibits. Additionally, although not rendered in the written judgment, a review of the transcript demonstrates that, while no objection was made to the video evidence presented by Defendants, the trial court excluded the videos because they did not fall within what is allowed by law under La. C.C.P. art. 966. Defendants did not proffer the video evidence, and that ruling has not been raised in this appeal.

On appeal, Plaintiffs assert that the trial court erred in: 1) failing to consider the Preparedness Plan or the deposition testimony of Odeh, wherein the Preparedness Plan was discussed; 2) granting Defendants' objection, striking the affidavit of Crocket; and 3) granting summary judgment in favor of Defendants where issues of credibility, intent, motive, aggression, and reasonableness remain in dispute.

## DISCUSSION

### *Evidentiary Rulings*

Plaintiffs contend in their first two assignments of error that the trial court erred in sustaining Defendants' objections, striking the Preparedness Plan and Crockett's affidavit. However, it is evident from the record that Plaintiffs did not seek to proffer this evidence. As we explained in *McBride v. Lichtenstein*, 2017-0715, p. 31 (La. App. 4 Cir. 12/5/18), 260 So.3d 658, 678:

3

La. C.C.P. art. 1636 allows for a proffer of evidence when the trial court has ruled that evidence inadmissible. In such a situation, "[i]t is incumbent upon the party who contends his evidence was improperly excluded to make a proffer, and if he fails to do so, he cannot contend such exclusion is error." *Mazzini v. Strathman*, 2013-0555, p. 5 (La. App. 4 Cir. 4/16/14), 140 So.3d 253, 256-57 (citing *Grusich v. Grusich*, 447 So.2d 93 (La. App. 4 Cir.1984)).

Considering that Plaintiffs failed to proffer the Preparedness Plan or Crockett's affidavit, they are now precluded from raising the issue of admissibility before this Court on appeal; the documents cannot be considered.

### *Summary Judgment Principles and Standard of Review*

"Appellate courts review the grant or denial of a motion for summary judgment *de novo.*" *In re Medical Review Complaint by Downing*, 2021-0698, p. 8 (La. App. 4 Cir. 5/26/22), 341 So.3d 863, 869 (citing *Indep. Fire Ins. Co. v. Sunbeam Corp.*, 1999-2181, 1999-2257, p. 7 (La. 2/29/00), 755 So.2d 226, 230).

In *Mapes v. State through Bd. of Supervisors of La. State Univ. Agric. & Mech. Coll.*, 2021-0166, pp. 4-5 (La. App. 4 Cir. 3/2/22), 336 So.3d 494, 497, this Court reiterated the law on summary judgment, stating:

> "The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by Article 969." La. C.C.P. art. 966(A)(2). "The procedure is favored and shall be construed to accomplish these ends." *Id.* "[A] motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(A)(3). "The only documents that may be filed in support of or in opposition to the motion are pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and admissions." La. C.C.P. art. 966(A)(4).

> "The burden of proof rests with the mover." La. C.C.P. art. 966(D)(1). However, "if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden ... does not require him to negate all essential elements of the adverse party's claim, action, or defense." *Id.* Instead, the moving party must "point out to the court the absence of

factual support for one or more elements essential to the adverse party's claim, action, or defense." *Id*. Then, "[t]he burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law." *Id.*

"A genuine issue is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue, and summary judgment is appropriate." *Maddox v. Howard Hughes Corp.*, 19-0135, p. 5 (La. App. 4 Cir. 4/17/19), 268 So.3d 333, 337. " 'A fact is material when its existence or nonexistence may be essential to the plaintiffs [sic] cause of action under the applicable theory of recovery; a fact is material if it potentially insures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute." *Id.* (quoting *Chapital v. Harry Kelleher & Co., Inc.*, 13-1606, p. 5 (La. App. 4 Cir. 6/4/14), 144 So.3d 75, 81). "Whether a fact is material is a determination that must be made based on the applicable substantive law." *Maddox*, 19-0135, p. 5, 268 So.3d at 337.

"In determining whether an issue is genuine, courts cannot consider the merits, make credibility determinations, evaluate testimony, or weigh evidence." *Tran v. Collins*, 2020-0246, p. 3 (La. App. 4 Cir. 8/20/21), 326 So.3d 1274, 1278 (quoting *Lewis v. Jazz Casino Co.*, 2017-0935, p. 6 (La. App. 4 Cir. 4/26/18), 245 So.3d 68, 72).

***Granting of Summary Judgment in favor of Defendants***

Plaintiffs assert in their final assignment of error that the trial court erred in granting summary judgment in favor of Defendants. The evidence before us on this summary judgment consists of the deposition testimony of Husam, Odeh, and Broadnax, along with Plaintiffs' Answers to Interrogatories and Responses to Requests for Production of Documents.[2]

Husam testified that he started working for Hanks in 2006 as a manager, and is now a co-owner along with his brother Yousef Odeh ("Yousef"). He could not

---

[2] Plaintiffs' discovery responses are not particularly germane to the issues before us on appeal.

remember if he was a co-owner at the time of this incident. Husam stated that he had a concealed carry permit at the time of the incident.

Husam testified that he heard loud yelling coming from Garrison at the deli counter. He approached Garrison "hoping to calm him down a little." Crockett was also at the deli counter with Garrison. Husam explained that he "felt like [Garrison] was becoming violent, so whatever I said, it wasn't working so I asked him to leave." Odeh and Hamid,[3] another store employee, also came over to speak with Garrison. Garrison and Crockett eventually left the store.

Husam, followed Garrison and Crockett out of the store "to make sure that they were leaving." Odeh and Hamid also followed. Husam further explained that he wanted to watch Garrison get in his vehicle, which was parked around the side of Hanks, because Garrison was threatening to "kill" or "shoot" them. After they exited the store, Husam watched Garrison walk towards his vehicle. At that moment "there was an altercation with [Crockett] in front of the store." Husam explained that Crockett would not leave. Rather, Crockett stayed in front of the store causing an altercation, saying mean things and pushing Odeh a couple of times. At that time, Husam testified that he saw Garrison pointing a gun so he unholstered his gun and shot Garrison. Husam further testified that he saw Garrison pull the trigger on his gun but that it may have jammed. He believed there was a casing from Garrison's gun that was lodged in the chamber. Odeh removed the casing. The police were called; Husam was taken in for interrogation and released. No criminal charges were brought.

Odeh testified in his deposition that he first saw Garrison at the deli counter arguing as Husam was trying to escort him out of the store. Odeh explained that he

---

[3] Hamid's last name does not appear in the record.

followed everyone outside to make sure they were leaving because Garrison and Crockett were making threats like "kill y'all" or slang like "smoke them." Odeh stated that he knew Husam was carrying a gun, which could be seen on his hip. When they went outside, Garrison was turning around the corner to leave and Crockett "kind of stayed, lingered around" in front of the store. Odeh first saw that Garrison had a gun "when he came back from around the corner." Garrison pointed the gun at him, and he tried to go back inside the store. Odeh explained that within less than a minute he heard gunshots. He did not know if the shots came from Garrison's gun or from Husam's gun. Odeh saw Garrison fall after he heard the gunshots. At that time, Odeh took Garrison's gun and put it inside the store.

Odeh was questioned about Hanks' Preparedness Plan which explains what to do when there's a robbery. Odeh read from a portion of the document wherein it stated "[a]ct calmly and do exactly what the robber says." Odeh acknowledged that Garrison was not attempting to rob Hanks.

Broadnax testified in her deposition that on the day of the incident she went with Garrison and Crockett to Hanks to get some food. The children remained in the truck, which was parked around the side of the store. She stated that Garrison and the lady working behind the deli counter "started exchanging words and two of the men from the counter walked over and one of the men walked from behind the store where it's like a little kitchen, and he grabs Corey arm. And they all got into a verbal, but I stepped back because I didn't want to interfere." At that time, Broadnax left the store "[b]ecause it was getting loud." She did not recall being asked to leave. Garrison, Crocket and the store employees all followed behind her. Broadnax stated that she did not see a gun on any of the employees. However, she

explained that one of the men "was reaching … [l]ike he kept grabbing his side asking Corey, '[w]hat do you want to do?'" Broadnax took that to mean the employee was carrying a gun.

When Broadnax got back to the truck she heard gun shots. She did not witness the actual shooting. Broadnax acknowledged that Garrison had her gun (a 9-millimeter Glock) on him when they went into the store. She indicated that the gun was hidden from view.

In granting summary judgment in favor of Defendants, the trial court found that Plaintiffs failed to meet their burden to show that there are genuine issues of material fact related to the duty owed to Garrison. Based on our *de novo* review of the record, we find no error in that ruling.

Plaintiffs' Petition for Damages alleges that Hanks' negligent conduct, through its employees, was the sole cause of Garrison's wrongful death. La. C.C. art. 2315(A) provides that "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it."

As this Court has explained:

> "A threshold issue in any negligence action is whether the defendant owed the plaintiff a duty." *FIE, LLC v. New Jax Condo Ass'n, Inc.*, 2016-0843, p. 23 (La. App. 4 Cir. 2/21/18), 241 So.3d 372, 391-92 (quoting *Ponceti v. First Lake Properties, Inc.*, 2011-2711, p. 2 (La. 7/2/12), 93 So.3d 1251, 1252). "The existence of the duty is a question of law." *Id.* at p. 23, 241 So.3d at 392 (quoting *Ogea v. Merritt*, 2013-1085, p. 24 (La. 12/10/13), 130 So.3d 888, 905). However, "[w]hether a legal duty exists, and the extent of that duty, depends on the facts and circumstances of the case, and the relationship of the parties." *Id.* (quoting *Joseph v. Dickerson*, 1999-1046, 1999-1188, p. 7 (La. 1/19/00), 754 So.2d 912, 916. "[T]he inquiry is whether the plaintiff has any law—statutory, jurisprudential, or arising from general principles of fault—to support his claim." *Id.* at p. 24, 241 So.3d at 392 (quoting *Ogea*, 13-1085, p. 24, 130 So.3d at 905 and *Faucheaux v. Terrebonne Consol. Government*, 615 So.2d 289, 292 (La. 1993)).

*FIE, LLC v. New Jax Condo Ass'n, Inc.*, 2016-0843, pp. 23-24 (La. App. 4 Cir. 2/21/18), 241 So.3d 372, 391-92.

As further recognized in *Agwaramgbo v. Seals*, 2023-0478, pp. 12-13 (La. App. 4 Cir. 1/31/24), 381 So.3d 839, 847:

> Louisiana employs a duty-risk analysis to resolve claims of negligence under La. C.C art. 2315. *See Harris v. Boh Bros. Constr. Co., LLC*, 2020-0248, p. 20 (La. App. 4 Cir. 5/26/21), 322 So.3d 397, 412 (quoting *Chanthasalo v. Deshotel*, 2017-0521, p. 6 (La. App. 4 Cir. 12/27/17), 234 So.3d 1103, 1107). To prevail under a negligence claim, the plaintiff must prove: (1) the defendant had duty to conform his conduct to specific standard; (2) the defendant failed to conform his conduct to appropriate standard; (3) defendant's substandard conduct was cause-in-fact of injuries; (4) the defendant's conduct was a legal cause of the plaintiff's injuries; and (5) actual damages. *Id.* (quoting *Chanthasalo*, 2017-0521, p. 6, 234 So.3d at 1107-08).

"If a plaintiff fails to prove even one of the duty/risk analysis elements, the defendant is not liable." *Duronslet v. Wal-Mart Stores, Inc.*, 2022-0019, p. 17 (La. App. 4 Cir. 7/27/22), 345 So.3d 1136, 1149 (citing *James v. Ernest N. Morial New Orleans Exhibition Hall Authority*, 2018-0198, p. 6 (La. App. 4 Cir. 12/26/18), 262 So.3d 958, 963).

Plaintiffs assert that genuine issues of material fact remain here. More specifically, they argue that jurors must decide whether the Hanks employees prolonged and escalated the incident or whether they were merely defending themselves, all of which requires the factfinder to decide issues of credibility, motive, intent and reasonableness. We disagree.

As discussed, both Husam and Odeh testified that the incident began with an argument between Garrison and an employee at the deli counter. Broadnax corroborated this assertion. After being asked to leave the store, both Garrison and Crockett made threats to "kill" Husam and/or Odeh. As explained in their deposition testimony, Husam and Odeh followed Garrison

and Crockett out of the store in order to make sure the men actually left, considering the threats that were being made. Husam described that once outside, Crockett remained in front of the store, continuing to make threatening remarks and pushing Odeh. Husam and Odeh both testified that Husam unholstered his gun and shot Garrison only after Garrison pointed his gun.

Plaintiffs presented no evidence to refute the testimony of Husam and Odeh. There is no evidence in the record to support Plaintiffs' assertion that the Hanks employees were the aggressors in the altercation. Rather, the deposition testimony of Husam and Odeh was clear and uncontroverted that Husam acted in response to Garrison pointing his weapon at Odeh. Broadnax did not witness the interactions that occurred outside of the store, and she did not witness the shooting. Crockett was not deposed, and his affidavit is not before us in this appeal.

In sum, based on our *de novo* review, we find that Plaintiffs cannot meet the evidentiary burden to prove the elements required to recover on a negligence claim, and they have failed to produce factual support sufficient to establish the existence of a genuine issue of material fact pursuant to La. C.C.P. art. 966. Accordingly, we find no error in the trial court's ruling.

## DECREE

For the foregoing reasons, we affirm the December 17, 2024 Judgment granting summary judgment in favor of Defendants.

**AFFIRMED**